BONANZA CONSOLIDATED MINING COMPANY et al., v. GOLDEN HEAD MINING COMPANY.

No. 1612.  (80 Pac. 436).

1. MINES—LOCATIONS—NOTICES—DESCRIPTION.—Two recorded notices of mining locations each contained the name of the claim, the signature of the locator, the date of location and of record, and the county and mining district where located. One of them described the claim as commencing at discovery, and running 750 feet in a northeasterly direction and 750 feet in a southwesterly direction, " Marking the exterior ends by lawful stakes 1, 2, 3, and 4, a claim 300 feet on each side of the center." The other was described as commencing at discovery, and claiming 300 feet on each side of the center of the vein, together with all dips, spurs, angles, and variations, running in a southwesterly direction, and 750 feet in a northeasterly direction from discovery, "marked by lawful stakes on both ends and corners 1, 2, 3, and 4." There was proof that the descriptions and markings indicated in each case were true; that a stake and notice were posted at each discovery, and that a stake three or four inches in diameter and four to four and one-half feet high was marked and set up in each corner, except that at one corner a stump was marked; and that surveys for patents were made, covering the ground practically as originally located and staked. *Held*, that such notices substantially complied with Revised Statutes U. S., section 2324 (U. S. Comp. St. 1901, p. 1426), requiring the locations to be distinctly marked on the ground so that their boundaries can be readily traced, and were not void for uncertainty of description.

2. SAME—EVIDENCE.—The sufficiency of the location of a mining claim, with reference to natural objects or permanent monuments, is a mere question of fact. [1]

3. SAME—CONFLICTING LOCATIONS.—Where, in a suit to quiet title to a mining claim, there was an issue as to a conflict between the B. No. 2, and the M. claims, the record in a former suit between the owners of the B. No. 2 and the L. C. claim, the parties being in privity, in which it was held that the B. No. 2 was not a valid location because its discovery point was within the location of the L. C., was admissible, though not pleaded, for the purpose of showing that the B. No. 2 location was invalid.

4. SAME—EVIDENCE—RES JUDICATA.—The issues in the two suits with reference to the conflict in location not being the same, the former suit could not be relied on as res judicata.
Straup, J., dissenting.

(Decided April 11, 1905).

APPEAL from District Court, Wasatch County; J. E. Booth, Judge.

Suit by the Bonanza Consolidated Mining Company and others against the Golden Head Mining Company. From a decree finding that neither plaintiffs nor defendant was entitled to the area embraced within certain mining claims, plaintiffs appeal.

AFFIRMED.

*E. A. Walton* and *A. W. Casey* for appellants.

*P. L. Williams* for respondent.

### APPELLANT'S POINTS.

The notices of location are indefinite and do not describe any ground, and do not tie to any natural monument or permanent object such as will indentify the claim.

---

[1] Gold Mining Co. v. Gold & Copper Co., 20 Utah 363, 58 Pac. 832; Wells v. Davis, 22 Utah 322, 62 Pac. 3; Wilson v. Triumph Mining Co., 19 Utah 66, 56 Pac. 300, 75 Am. St. Rep. 718.

Such notices have uniformly, under such circumstances, been held void for uncertainty.

Section 2324, Revised Statutes of the United States requires all recorded notices to contain such a reference to a natural object or permanet object as will identify the claim. (*Drummond v. Long* [Col.], 13 Pac. 543; *Faxon v. Bernard*, 4 Fed. 702; *Mining Co. v. Drake* [Col.], 9 Pac. 787; *Darger v. Lesieur*, 8 Utah 160; s. c., 9 Utah 192; 1 Lindley on Mines [2 Ed.], 355.)

The pleadings of the defendant do not show in any way that it relied upon a former adjudication, and there are and always may be matters in avoidance of a decree, and it could not be expected that we would be prepared to meet such proof with matters in avoidance, not having been advised by proper pleadings.

In equity the defense of former adjudication to bar a hearing on the merits must always be set up by proper averments in the pleadings. (*Galloway v. Hamilton*, 1 Dana, 576; *Lyon v. Talmadge*, 14 Johns 511; *Ferguson v. Miller*, 5 Ohio 460; *Jourolman v. Massangall*, 86 Tenn. 81.) The rule is the same under the Codes. (*Cave v. Crafts*, 53 Cal. 135; *Bowe v. Milk Co.*, 44 Minn. 460; *Glenn v. Priest*, 48 Fed. 19; *Norris v. Amos*, 15 Ind. 365; *Hax v. Leis*, 1 Col. 187.)

The admissions and declarations of an administrator or trustee, made in his individual capacity, are not admissible to bind the estate he represents. (*Waterman v. Wallace*, Fed. Case No. 17261; *Thompson v. Drake*, 32 Ala. 99; *Church v. Howard*, 79 N. Y. 415; *Lee v. Bank*, 78 N. W. 692.) Admissions of stockholders do not bind a corporation. (2 Cook on Corporations, 726, citing many cases.)

The acts necessary to constitute adverse possession have always been dependent upon the character of the ground, whether it was wild or cultivated, in a settled community or elsewhere, and upon the particular use which might be made of it. In a country where everybody's land is inclosed by fences one naturally does not get title by adverse possession

without an inclosure, and where land is used for such a purpose that it is used every day in the year, one's possession must be evidenced by daily acts, but the only use to which one puts a mining camp is to prospect the same and extract mineral therefrom, and this is often suspended during some parts of the year and the physical acts of possession relate generally to a small part of such claim, viz., the workings thereon, shafts, tunnels, etc. (Rev. Stat. Utah, 2862, 2863; 2 Lindley on Mines, 688; R. S. U. S., 2332; *Altoona, etc., Mining Co. v. Mining Co.,* 114 Cal. 105; *Belk v. Meagher,* 104 U. S. 279, 287; *Harris v. Equator Mining Co.,* 8 Fed. 863.)

### RESPONDENT'S POINTS.

Notwithstanding all that is said, and the cases and authorities cited by plaintiff, we insist that the great weight of authority and reason will support the sufficiency of the notices of location in this case, and in connection with the evidences of the staking of the ground, constituted good and valid locations of each of the claims located as the Medway and the Hillside, and that the finding and conclusion of the court below upon these points should be affirmed. The established rules of construction of the acts of parties in the initiation of rights upon the public mineral lands, as well as in the various steps taken by the miner to perfect his location, are to be regarded with indulgence, and the notices required invariably receive at the hands of the court a liberal construction. See section 381, 1 Lindley on Mines (2 Ed.), where this doctrine is fully stated, and is supported by many citations of authorities, amongst others quoted from in the text by the author being the case of *Wells v. Davis,* 22 Utah 322. At section 373 the same author lays down the doctrine as to what is a sufficient marking under the Federal law, to which we invite the attention of the court. (*North Noonday Mining Co. v. Orient Mining Co.,* 1 Fed. Rep. 522; *Jupiter Mining Co. v. Bodie Cons. Mining Co.,* 11 Fed. 666; *Carter v. Bacigalupi,* 83 Cal. 187;

*Eaton v. Norris,* 131 Cal. 561; *Erhardt v. Boaro,* 113 U. S. 527; *Hammer v. Goldfield Mining & Milling Co.,* 130 U. S. 291.)

STATEMENT OF FACTS:

This suit was brought to quiet title to four mining claims and to the conflict areas in the claims which are included within the exterior boundaries of two mining claims, the Medway and Hillside, for which the defendant had made application for patent. It appears from the evidence that the plaintiffs' claims involved in the controversy are the Blackhawk No. 1 and Blackhawk No. 2, each of which was located on the 6th day of January, 1891; the Eclipse, located on the 1st day of January, 1889; and the Fraction, located on the 16th day of September, 1891. The defendants claims involved are the Medway and the Hillside mining claims, and each of them was located on the 7th day of January, 1888. The Eclipse mining claim covers substantially the same ground as the Hillside, and its discovery and initial point is within the limits of the Hillside claim. The Blackhawk No. 2 covers nearly the whole of the Medway claim, and its discovery and initial point is within the boundaries of the Medway. The Blackhawk No. 1 conflicts partially with the Medway, and its discovery point is within the exterior boundaries of the Last Chance mining claim, a claim that the evidence showed had been previously located and adjudicated to belong to Hugh Kilkenney, the predecessor in interest of the defendant. The Fraction mining claim conflicts with the Hillside. At the trial the court found the issues in favor of the defendant, as to the Medway mining claim, and found and held that both the Medway and Hillside claims had been properly located upon unoccupied mineral land, and their boundaries marked as required by law, but that the required work had not been done on the Hillside claim, and that, therefore, it had become forfeited to the United States; that the location of the Eclipse mining claim was illegal and void, because it was made within the exterior boundaries of the Hillside, before the for-

feiture of that claim; and that neither one of the parties to this controversy is entitled to the area embraced within the boundaries of the Hillside and Eclipse mining claims. A decree was entered accordingly, and thereupon the plaintiffs prosecuted this appeal.

BARTCH, C. J., after stating the facts, delivered the opinion of the court.

The principal and decisive question presented on this appeal is whether the notices of location of the Medway and Hillside mining claims, considering the supplementary proof, were properly admitted in evidence over the objection by the appellants of uncertainty of description. The notice of the Medway reads:

"Notice is hereby given that the undersigned having complied with the requirements of section 2324 of the Revised Statutes of the United States and the local laws, customs and regulations of this district, has located 1,500 feet in length by 600 feet in width on this the Medway lode, vein or deposit, bearing gold, silver and other precious metals, situated in Snake Creek Mining District, Wasatch county, Utah Territory, the location being described and marked on the ground as follow, to-wit:

"Commencing at discovery and running 750 feet in a northeasterly direction, and 750 feet in a southwesterly direction and marking the exterior ends by lawful stakes 1, 2, 3, and 4, a claim 300 feet on each side of center of same. The nearest known claim is the Hillside. The mining claim above described shall be known as the Medway.

"Located this 7th day of January, 1888.

"Name of locator, Hugh Kilkenney, 1,500 feet.

"Filed for record January 11, 1888, at 3 o'clock, p. m.

"JEREMIAH ROBY, Recorder."

The notice of the Hillside reads:

"Notice is hereby given that the undersigned, having complied with the requirements of section 2324 of the Revised Statutes of the United States and the local laws, customs and regulations of this district, has located 1,500 feet in length by 600 feet in width on this Hillside lode, vein or deposit, bearing gold, silver and other precious metals, situated in the Snake Creek Mining District, Wasatch county, Utah Territory, the location being described and marked on the ground as follows, to-wit:

"Commencing at the discovery and claiming 300 feet on each side of the centre of the vein, together with all dips, spurs, angles and variations, running 750 feet in a southwesterly direction and 750 feet in a northeasterly direction from discovery and marked by lawful stakes on both ends and corners 1, 2, 3, and 4. The nearest known claim is the Wild Bill mine on the west. The mining claim above described shall be known as the Hillside mine.

"Located this 7th day of January, 1888.

"Name of locator, Hugh Kilkenney, 1,500 feet.

"Filed for record January 11, 1888, at 3 o'clock, p. m.

"JEREMIAH ROBY, Recorder."

The objections urged to these notices are that they are indefinite, do not describe any ground, and do not tie the claims to any natural monument or permanent object; and that they do not comply with the requirements of section 2324, Revised Statutes, United States (U. S. Comp. St. 1901, p. 1426), which provides that such locations "must be distinctly marked on the ground" so that their "boundaries can be readily traced," and requires that all records of mining claims shall contain, among other things, "such a description of the claim or claims located by reference to some natural object or permanent monument as will identify the claim." We do not regard these objections as well founded. It will

be observed that, while the notices are not artistically drawn, each one nevertheless shows a discovery made upon a vein or deposit bearing precious metals; the amount of ground claimed; the length of the claim, giving the distance in opposite directions from the discovery; that the claim was staked at both ends and at the corners in a lawful way; and refers to another claim as the one nearest to it. Each notice also contains the name of the claim, the signature of the locator, the date of location and of record, and the county and mining district where located. Then there is proof to show that the descriptions and marking of the boundaries indicated in each notice were true; that a stake and notice was posted up at each discovery, and that a stake three or four inches in diameter and four to four and a half feet high was marked and put up at each corner, except at the northeast corner of the Medway, where a stump was marked as the corner; that the stakes were driven into the ground at the respective corners and numbered as indicated in the notices; that they were reset from time to time and kept up; and that the surveys for patent were made covering the ground practically as originally located and staked. These notices, where the ground was actually marked as shown by the proof herein, although in some particulars indefinite and subject to criticism, were not calculated to mislead the public. Any prospector who appeared and read the notices could readily identify the ground embraced within the description. Such a notice is a sufficient compliance with the statute, and when it substantially complies with the statute it is sufficient for record.

In the location of a mining claim the notice or "certificate is not required to show the precise boundaries of the claim as marked on the ground, but it is sufficient if it contains directions, which, taken in connection with such boundaries, will enable a person of reasonable intelligence to find the claim and trace the lines." (1 Lindley on Mines. sec. 381; *Carter v. Bacigalupi,* 83 Cal. 187, 23 Pac. 361.) Location notices of mining claims, being usually prepared by unlettered men, must not be held to technical accuracy, but must be construed with much liberality, else the main object of the

law, which was not to wrest from the prospector the fruits resulting from honest toil and innumerable hardships, but to aid him in acquiring valuable rights in mining property, and to develop the mineral resources of the country, will be defeated. It is true the descriptions should be as definite as the surrounding circumstances permit.

"With just how much accuracy the description of a mining claim, in reference to a natural object or permanent monument, must be stated in the notice of location, is not set forth in the statute; and where, as in this case, the location was evidently made in good faith, we are not disposed to hold the locator to a very strict compliance with the law in respect to his location notice. If, by any reasonable construction, in view of the surrounding circumstances, the language employed in the description will impart notice to subsequent locators, it is sufficient. Prospectors, as a rule, make no pretensions of scholarship or the art of composition, are neither surveyors nor lawyers; and if, in their notice of location, technical accuracy of expression were an absolute requirement, the object of the law, which doubtless is the encouragement and benefit of the miners, would in many cases be frustrated, and injustice would result, by the disturbing of possession after much hard labor performed and money in good faith expended. Therefore mere imperfections in the notice of location will not render it void. Courts have usually construed the statute respecting the location of mining claims with much liberality, and the sufficiency of the location, with reference to natural objects or permanent monuments, is simply a question of fact." (*Gold Mining Co. v. Gold & Copper Co.*, 20 Utah 363, 58 Pac. 832; 1 Lindley on Mines, sec. 355; *Wells v. Davis*, 22 Utah 322, 62 Pac. 3; *Wilson v. Triumph Min. Co.*, 19 Utah 66, 56 Pac. 300, 75 Am. St. Rep. 718; *North*

*Noonday Min. Co. v. Orient Min. Co.* [C. C.], 1
Fed. 522; *Erhardt v. Boaro,* 113 U. S. 52, 5 Sup.
Ct. 560, 28 L. Ed. 1113.)

The circumstances and conditions of the surrounding
country may be, and, doubtless, in many instances are, such
that stakes driven firmly into the ground will afford the best
means to identify the claim and the discovery. In such cases
such identification will be considered as a sufficient compli-
ance with the statute. As said by the Supreme Court of the
United States in *Hammer v. Garfield Min. Co.,* 130 U. S.
291, 9 Sup. Ct. 548, 32 L. Ed. 964:

"There provisions, as appears on their face, are
designed to secure a definite description — one so
plain that the claim can be readily ascertained. A
reference to some natural object or permanent mon-
ument is named for that purpose. Of course, the
section means, when such reference can be made.
Mining lode claims are frequently found where
there are no permanent monuments or natural ob-
jects other than rocks or neighboring hills. Stakes
driven into the ground are in such cases the most
certain means of identification." (*Jupiter Min.
Co. v. Bodie Con. Min. Co.* [C. C.], 11 Fed. 666;
*Eaton v. Norris,* 131 Cal. 561, 63 Pac. 856.)

We are of the opinion that the notices in question, under
the circumstances, were sufficiently definite to comply with
the law, and were properly admitted in evidence. Nor do
we think the court erred in admitting in evidence, against
the objection that it was not pleaded, the decree in favor
of Kilkenny and against the plaintiff in a former action,
which decree adjudged Kilkenny to be the owner of the Last
Chance mining claim, which embraced within its exterior
boundaries the discovery point of Blackhawk No. 2 claim.
There is no doubt that, where a party to an action in equity
relies upon a former adjudication as a bar to an action, such
adjudication, to be of avail, must be pleaded; but that doc-
trine has no application here. In this case the controversy

is over the conflict of the Blackhawk No. 2 with the Medway claim, and this conflict was not involved in the former litigation. There only such portion of the Blackhawk No. 2 was involved as conflicted with the Last Chance claim, and that conflict was adjudicated in that case; and the Last Chance, which included within its boundaries the discovery point of the Blackhawk No. 2, was decreed to belong to Kilkenny. In this action a prior location of a valid claim, Blackhawk No. 2, was alleged by the plaintiffs. This was denied by the defendant, and its claim that the Medway was a valid location was set up and relied upon. Upon this issue thus raised the right to the conflict area was to be determined. The defendant, to maintain its position, had a right to resort to any legal proof which would show that the Blackhawk No. 2 was not a valid location, and hence could show by such proof that the discovery point of that claim was adjudicated to be within the boundaries of another prior, existing valid location or claim. For such purpose the judgment in question was admissible, because it constituted legal proof of the fact that the entire location of the Blackhawk No. 2 claim, including that portion in conflict with the Medway claim, is invalid. It was a judgment in a suit where the opposing party herein was party plaintiff, and where the party defendant herein was in privity with the party defendant therein, and constituted merely proof that a certain mineral location was void. The decree was not, and could not, without proper plea, be offered for the purpose of showing that the matter in issue herein was res judicata. Nor could it be relied upon as res judicata of this controversy. In Glenn v. Priest (C. C.), 48 Fed. 19, Mr. Justice Thayer, referring to a Missouri case, where it was held that judgment might be offered in a subsequent case as evidence of a fact, though not pleaded, said:

"It will also be observed from a careful examination of the case in question that, as the issues were made up, the judgment in all probability was properly admissible in evidence, even if it had been objected to, because it tended to contradict material facts stated in the petition. My conclusion is that

under the Missouri Code a judgment must be specially pleaded before it can be admitted in evidence, when the purpose of offering it is merely to show that the matter in issue is *res judicata.*. If a judgment in a former suit between the parties tends to disprove material facts stated by the plaintiff in his petition, a different rule obtains." (*Garton v. Botts,* 73 Mo. 274; *Krekeler v. Ritter,* 62 N. Y. 372.)

Nor do we think the court erred in holding that the appellants are not entitled to the Eclipse mining claim. The findings and decree as to that claim as well as to the others appear to be supported by competent proof.

The remaining questions presented, but not herein discussed, we have carefully examined, and found no reversible error.

The judgment of the court is affirmed, with costs.

McCARTY, J., concurs.

STRAUP, J. (dissenting).

I am unable to concur in the opinion announced by the Chief Justice in this case. I am clearly of the opinion that by an affirmance of the judgment this court will hold for naught the plain provisions of the statute, the basic reasons for rules and statutes requiring a record of mining claims, and every authority to which our attention has been called. Appellants claim that respondent's location notices as recorded are void for uncertainty of description, and our attention is called to that particular provision of section 2324, Revised Statutes, United States (U. S. Comp. St. 1901, p. 1426), which provides:

"All records of mining claims hereafter made shall contain the name or names of locators, the date of the location, and *such a description of the claim or claims located by reference to some nat-*

*ural object or permanent monument as will identify the claim."*

It was made to appear by the stipulation of the parties that at the time of respondent's locations the district rules required a record to be made. The United States statutes did not require, and never have required, the recording of claims. By local rules and state and territorial legislation recording has often been required, and the authorities are uniform that the requirements of the United States statute as to the contents of a recorded notice or certificate only apply when a record is required by the local law.

> "The mining laws of Congress do not require any notice or certificate of location to be recorded. If a notice is required by either state law or local rules to be recorded, it must contain all the requisites prescribed by section 2324 of the Revised Statutes." (1 Lindley on Mines, 275.)

The purpose of the record of a mining claim is, like all records of written instruments relating to title, to affect all persons subsequently dealing with the same subject with constructive notice of the facts disclosed by the record. (Lindley on Mines, 392.) The record only imparts constructive notice of those facts which could be ascertained by an examination of the record, and those as to which it reasonably suggests an inquiry, and which would be disclosed by such inquiry.

> "The constructive notice which flows exclusively from the record cannot be more extensive than the facts stated therein, and must be understood to be only such notice as could have been obtained from an actual inspection of the record." (24 A. & E. Ency. Law [2d Ed.], 151.

It has therefore always been held that a description in a record which does not in and of itself identify the subject-matter, or point out and suggest means of identification, is

void for uncertainty. And this follows as a matter of course, for it is unreasonable to say that a person should be bound by a record to take notice of some fact not appearing in or indicated by such record. (Wade on Notice, 174-176.)

Another and intimately connected purpose of requiring a record and a certainty of description therein is to prevent parties from attempting to make a description intended for one thing apply to another thing more or less similar in general character, and especially, in regard to mining claims, to prevent floating or swinging of claims so as to cover other and different ground from that originally located. (*Darger v. Le Sieur,* 8 Utah 160, 30 Pac. 363; on rehearing, 9 Utah 192, 33 Pac. 701; *Gleeson v. Min. Co.,* 13 Nev. 465.) In the latter case the court says:

"There can be no question that the original Paymaster notice was all that the law required. The only.objection to it is that it did not contain in itself a description of the claim by reference to some natural object or permanent monument. It was not necessary that it should. It is only the record of the claim that is required to contain such a description, and there are excellent reasons for making a distinction between the notice and record in this particular. The record, if it consisted of the mere copy of the notice, would not identify the claim, and there would be an opportunity, as well as a temptation to the locators, upon the discovery of a more valuable mine in the vicinity, to prove by perjured witnesses that their notices were posted on that mine. The floating of claims was by no means an infrequent occurrence prior to the act of 1872. And if such attempts were seldom successful, they were always vexatious, and often the means of levying a heavy blackmail. It was on this account that the record (not the notice) was required to contain 'such a description of the claim or claims located by reference to some natural object or permanent monument as will identify the claim.' "

This case was cited and followed in *Gird v. California Oil Co.* (C. C.), 60 Fed. 531. Whatever conflict appears to exist in the authorities as to the contests of location notices is accounted for by the fact that a reference to a natural object or permanent monument is only necessary where the local law or rule requires a record, and such of the cases that hold location notices without such reference admissible have arisen where the local law did not require a record to be made. Mr. Lindley says, in section 355, vol. 1:

"A notice might serve the purpose of a notice of discovery, manifesting an intention to locate, and be wholly insufficient as a notice of perfected location which is to be recorded." "In the absence of a state statute or local rule requiring it, the posted notice need not contain any reference to ' natural objects or permanent monuments, but the record notice must contain such description."

In the same volume, in section 379, he says:

"In the absence of a state law or local rule requiring a record to be made, Congress has not undertaken to prescribe the nature of the notices which a miner may be compelled by such law or rules to post, or which he may see fit to post on his own motion. It is only when such notice, or its equivalent, is required to be recorded, that the provision of the federal law becomes mandatory."

I think the Chief Justice, in his opinion, has overlooked the object and purpose of a record and the principles of law applying thereto, and has likewise rejected the plain distinction herein pointed out between the two classes of adjudged cases (which distinction at once removes all apparent conflict in the cases), and has thereby fallen into the following errors: (1) In his assumption that the discovery of mineral in place (which is one requisite of a valid location) or the marking of the boundaries (which is another requisite of a valid location) has anything to do with or can cure a defect

in a recorded description of the claim (which is still another
requisite to a valid location where a record is required to be
made). (2) In his assumption that if certain things, such as
name of locator, date of location, etc., which the law requires
to appear, be contained in the recorded notice, another thing
(the description) may therefore be omitted, or its defects
cured by their presence. (3) In his assumption that the
want of description could be cured by proof showing that
the claims were located at the place where they are now
claimed to be. (4) In his assumption that the words "law-
ful stakes" are descriptive, and that the term "lawful" is
description of a stake, and that it identifies or tends to dif-
ferentiate one stake from another.

Taking the propositions up in their order, it appears that
the law requires several independent things to be done.
Among them, a record made; which record must contain an
identifying description of the claim, so that from a reading
of the record one would be led therefrom to know the partic-
ular part of the district where the claim was laid. Whether
the locator has found mineral in place, or whether he has
staked the claim, or whether he used lawful or unlawful
stakes, or whether he kept them up from to time, or whether
the date of the location appears, or the name of the locator is
in the notice, are all immaterial as to what the record should
contain by way of description with reference to a natural ob-
ject or permanent monument. So at some subsequent time
the fact that some one swears that one of the stakes was a
stump, or that the claims are in the place a party might want
them to be, is alike unaiding to the uncertain description in
the record. What information would a prospector or other
person get from the record of the notices in this case as to
where in the district the claims are situated? From the rec-
ord of the Hillside notice one discovers that the claim is laid
in Snake Creek mining district, Wasatch county, and that
the "nearest known claim is the Wild Bill mine on the west."
That is all the reference to any natural object or permanent
monument: Does this identify the claim? Does it show
in what part of the district the claim may be found? Clearly

not. But it is claimed that the claim is laid in a certain direction, and has lawful stakes at each end. Still one is as much in the dark as ever as to what part of the district the claim is in. Clearly, the record does not show the locus with reasonable or any certainty. Neither does the record suggest any inquiry, which, if made, will lead to identification. If it gave the distance from the Wild Bill mine, the claim might be found and identified; but it does not give the distance, and so one distance will fit as well as any other; hence the uncertainty. Neither do the words "marked by lawful stakes" either identify the ground or suggest any means of identification. Inasmuch as no particular kind of stakes, or any stakes at all, are required by any law, the word "lawful" has no meaning in this connection, and is not descriptive of anything. "Lawful" means according to or provided by law.

I am unable to understand what the Chief Justice means when he says "that the claim was staked at both ends at the corners in a lawful way." As one stake is as lawful as any other, the stakes referred to in the record afford and suggest no information of, or means of ascertaining, the whereabouts or locality of the claim. In the prevailing opinion it is said, "Any prospector who appeared and read the notice could readily identify the ground." Herein the majority court are assuming that the prospector first came upon the ground, and then saw and read the posted notices. But that is not the question before us. If subsequent locators are to be bound by whatever may have been posted on the ground at some prior time, then there is no occasion or necessity to require a record to be made, or that such record should contain any description whatever. The question is, and the authorities all hold one way upon it: Can the claim be found from the description as recorded? Not, of course, the exact or precise boundaries, but the place where one would find markings of the claim by which he could trace its boundaries. This is what Mr. Lindley says at section 381 of his work on Mines, cited and quoted from in the majority opinion. Suppose that on every square mile in the Snake Creek mining district Mr. Kilkenny had discovered mineral, and staked

and marked a pair of claims exactly as it is claimed he
staked and marked the two in question here. The notice
could be applied to one group of the claims as well as any
other. There is therefore no certainty in these descriptions;
and to hold them sufficient is to permit a description to be
wholly made and created by parol evidence, and when so
made to be binding on third parties—a result not sanctioned
by any authority, and manifestly at variance with every
principle of law. To affect third parties, a description in the
record "must direct the mind to evidence whereby the precise
thing may be ascertained, and, if thereby absolute certainty
may be attained, the instrument is valid; otherwise it is void
for uncertainty." (*Ormsby v. Nolan*, 69 Iowa 130, 28 N.
W. 569; *Tatum v. Croom*, 60 Ark. 487, 30 S. W. 885; *Tindall v. Wasson*, 74 Ind. 495.) Third persons are not affected
with constructive notice by a record of an instrument affecting real estate where the property is not identified by the
description. (*Davis v. Ward*, 109 Cal. 186, 41 Pac. 1010,
50 Am. St. Rep. 29.) The case of *Carter v. Bacigalupi*, 83
Cal. 187, 23 Pac. 361, cited by the Chief Justice, does not
support the conclusion that if a notice is sufficient for a posted
notice it is sufficient for record. In the first place, no law of
the United States, territory of Utah, or the Snake Creek mining district required any kind of notice to be posted, and so
to say that the notices in the case at bar comply with the statute, and that when they sufficiently comply with the statute
they are sufficient for record, is to imply something quite contrary to the facts. In the *Carter case the district rules required a posted notice and a record thereof*, and "the language
of the statute was repeated in section 3 of the local rules,"
and, of course, if a notice as posted was sufficient under such
rules it would be sufficient for record. "Hence," the court
says, "it must be held that under these rules, if the notice as
posted is sufficient, it is sufficient as recorded. This is not
necessarily the case in all districts. In some no notice is required to be posted, and it may be that in others less is required for the posting than for the recording." Commenting on this case, Mr. Lindley says:

"This must not be understood as sanctioning a
rule that the record of a posted notice is sufficient
where such posted notice does not contain the facts
required by section 2324, Revised Statutes, United
States, providing for the contents of the record.
Neither a local rule nor a state statute can dis-
pense with the plain requirement of the federal
law." (1 Lindley on Mines, 355.)

It may be well to note, too, that the notice in the *Carter
Case* refers to tying by direction and distance to Turnback
creek, which the court correctly held to be a natural monu-
ment. It is true that the claimant is entitled to a liberal con-
struction of his description, but here there is no description
to construe. It cannot be said that where a purported de-
scription will apply equally as well to any area 600 feet wide
by 1,500 feet long there is a substantial compliance with the
statute. No case has been cited to such a proposition.

It may be well to further call attention briefly to the cases
upon which the opinion of the majority court is supposed to
rest. In *Mining Co. v. Mining Co.,* 20 Utah 363, 58 Pac.
832, 77 Am. St. Rep. 913, the reference to a natural object
and permanent monument was as follows: "Situated about
one mile and a half eastward from the depot under a large
cliff of rock." Of course, this is a good reference, and one
reading the record would be put upon inquiry respecting the
depot and the cliff, and could at once know the approximate
location of the claim, and such a description could be applied
to a particular locality, and would not apply anywhere else.
The proof, too, in that case, as to there being only one depot
in the district, was proper to complete the description, and
was not received to make a description. In *Wells v. Davis,*
22 Utah 322, 62 Pac. 3, the description held sufficiently defi-
nite contained a reference to natural objects and permanent
monuments as follows: The one claim, "situated on the
southwest side of Car Fork about 150 feet above the Levant
lode between Log and Car Forks about 300 feet from the

29 Utah—12

creek," etc.; the other claim, "situated between Muddy and Log Fork gulches under a certain prominent reef of rocks and about 250 or 300 feet southwesterly from the southwesterly end of Bonham Lode survey." In *Wilson v. Triumph Min. Co.*, 19 Utah 66, 56 Pac. 300, 75 Am. St. Rep. 718, the certificate of location objected to and held sufficient contained this reference: "Located on the east side of the Mormon Chief mine and southeast of the Elmer Ray mine." The court very properly held that "when a notice of location is recorded it must contain such a description of the claim or claims located by reference to some natural object or permanent monument as will identify the claim," and that such references were sufficient to show the locality of the claim. That case, as held by the unanimous court, does not conflict with *Garger v. Le Sieur*, 8 Utah 160, 30 Pac. 363, and supports here appellant's contention. *North Noonday Co. v. Orient Min. Co.* (C. C.), 1 Fed. 522, declares unequivocally that no description is necessary except the local law requires a record, and does not attempt to say that a description of a claim by reference to its own markings is good. The recorded notice there tied the claim to Silver Hill and the Noonday shaft, two permanent objects, and the court, after so stating to the jury, said: "It is for the jury to determine whether a miner seeking information from the record could go to the permanent object, the Noonday shaft on Silver Hill, and thence east, and find the stake and notice pointing out the location on the ground with reasonable certainty." Judge Sawyer, as all courts heretofore have, recognized the necessity in the recorded notice that there be an initial point given, some permanent object, from which the general locality of the claim is fixed and determined. *Erhardt v. Boara*, 113 U. S. 527, 5 Sup. Ct. 560, 28 L. Ed. 1113, was a case involving the sufficiency of the posted notice as a preliminary notice only. The court, per Field, J., said: "To that extent, as a notice of discovery and original location, it is sufficient." He then goes on to say that a proper certificate containing a description of the claim by reference to a natural object or permanent monument, etc., did not need to be recorded for

ninety days after the discovery. In *Hammer v. Garfield Min. Co.*, 130 U. S. 291, 9 Sup. Ct. 548, 32 L. Ed. 964, the claim was described by metes and bounds referring to stakes A, B, C, and D at each corner of the claim, and the locus of the claim itself described as being "about 1,500 feet south of Bangham's Little Jennie mine," etc.; as the court says, "probably the best known and most easily, defined object in the vicinity." In *Jupiter Min. Co. v. Bodie Min Co.* (C. C.), 11 Fed. 666, the contents of the location certificate do not appear. The court, charging the jury, said that the permanent monument might consist of a prominent post or stake firmly planted in the ground, and that the natural object or permanent monument might be on the ground located or elsewhere, and that, if the local rules required a record, it must contain such a reference to some natural or permanent monument as would identify the claim. In its language that case goes farther towards supporting respondent than any other authority. But respondent's *notices* do not pretend to refer to even a prominent post or stake firmly planted in the ground. In *Eaton v. Norris*, 131 Cal. 561, 63 Pac. 856, the question of a reference to a natural object or permanent monument was not involved, for the reason, as the court says, there were no local rules or law requiring a record to be made. The court there held that the stakes driven in the ground at the four corners of the claim were a sufficient *marking of the claim upon the ground*—a requirement entirely distinct from the *requirement as to the contents of the record*.

The prevailing opinion is squarely in conflict with *Darger v. Le Sieur*, 8 Utah 160, 30 Pac. 363 (rehearing denied 9 Utah 192, 33 Pac. 701, by the full bench, the present chief justice concurring), and the three cases next following, approved and cited therein. In *Faxon v. Barnard* (C. C.), 4 Fed. 702, the claim was described as "situated in the north side of Iowa Gulch about timber line on the west side of Bald Mountain. Such claim is staked and marked as the law directs." Judge Hallett said: "It is utterly impossible to find in this language any reference to a natural object or permanent monument defining the location." In *Drummond v.*

*Long* (Colo. Sup.), 13 Pac. 543, the court says, referring to
section 2324, Revised Statutes, United States, (U. S. Comp.
St. 1901, p. 1426):

> "The intention of the provision is to give one
> seeking the locus of a recorded claim something in
> the nature of an *initial point*, and, following the
> course and distance given, find with reasonable
> certainty the claim located."

In *Gilpin Min. Co. v. Drake* (Colo. Sup.), 9 Pac. 787,
the court says, "One of the important requisites of the same
section is that such a description of the claim be given in the
location certificate by reference to some natural object or per-
manent monument as will identify the claim," and then pro-
ceeds to hold a notice insufficient for want of a definite ref-
erence.

I also think the court erred in permitting the witness Gor-
linski to detail a conversation between himself and A. V. Tay-
lor. It was hearsay and incompetent. Taylor was not personal-
ly a party to the action, and his admissions did not bind the es-
tate he represents. (*Lee v. Bank* (Iowa), 78 N. W. 692;
*Church v. Howard*, 79 N. Y. 415.) Neither would the fact
that he was a stockholder of plaintiff corporation render the
evidence competent. (2 Cook, Cor., 726.)

The court also erred in excluding evidence that the Hill-
side ground was not open to location when located as the Hill-
side because having been located as the Little Lee in January,
1887. The point was directly so decided in *Harrington v.
Chambers*, 3 Utah 94, 1 Pac. 362. The court should have,
at all events, decreed to plaintiff the Eclipse ground. Plain-
tiff had been in possession of the claim continuously work-
ing the claim for more than the statutory period. (Rev. St.
U. S. 2332 [U. S. Comp. St. 1901, p. 1433]; *Belk v. Mea-
gher*, 104 U. S. 279-287, 26 L. Ed. 735; *Lavagnino v. Uhlig*,
26 Utah 1, 71 Pac. 1046, 99 Am. St. Rep. 808.)

For these reasons I do not agree with the majority of the
court, but am of the opinion that the judgment of the court
below should be reversed.