Argued October 5; affirmed November 5; rehearing denied
December 11, 1934

YOUNG *v.* PAPST ET AL.

(37 P. (2d) 359)

A. J. *Moore* and N. G. *Wallace,* both of Bend, for appellants.

J. N. *Johnston,* of Grants Pass, for respondent.

BELT, J. This is an action in ejectment to determine the title and the right to possession of eight placer mining claims situated in the Briggs creek unorganized mining district in Josephine county, on unappropriated but surveyed government land. From a judgment in favor of the plaintiff, the answering defendants appeal.

It is alleged in the amended complaint that the plaintiff, on May 1, 1931, made a discovery of gold-bearing gravel on each of the 20-acre claims involved in this controversy; that, on May 6, 1931, he posted notices on each of these claims declaring his intention to hold and work said property as placer mining locations; and that he marked the boundaries of each claim and established monuments at the corners thereof. It is further alleged that, on August 10, 1932, the plaintiff caused to be filed and recorded in the office of the county clerk of Josephine county copies of said location notices as posted on the ground. After particularly describing, by metes and bounds, each of these claims, the plaintiff alleges that the defendants wrongfully withhold possession of such property to his damage in the sum of $1,000.

A demurrer to the amended complaint having been overruled, the defendants answered denying that plaintiff had located any of the claims as alleged or that he had been damaged in any sum. The defendants, however, admitted that the plaintiff had caused to be recorded copies of pretended location notices. As a further and separate answer and defense, the defendants in brief alleged: That the description of the placer claims as set forth in the amended complaint, by metes and bounds, is so indefinite and uncertain that the claims cannot be identified; that plaintiff did not mark the corners or boundary lines of his claims so that they could be readily traced on the ground; that the alleged placer claims, or any of them, have not been located or described according to the ''government system of public-land surveys'', although it was entirely practicable for the plaintiff to have so described them; that plaintiff did not make a discovery of gold or any other valuable mineral on any of the claims prior to time of his alleged location thereof; and that plaintiff did not perform his annual assessment work on any of the claims for the assessment year beginning July 1, 1932. It is further alleged that the plaintiff in making his alleged placer locations did not act in good faith and that he did not record his notices until approximately fifteen months after the time he claims to have located his claims. As a further answer and defense the defendants allege that, acting through their attorney in fact, the defendant W. H. Rowe, they located on the 16th day of August, 1933, according to legal subdivisions, Black Bear Placer Claim No. 1, Black Bear Placer Claim No. 2, and Black Bear Placer Claim No. 3, aggregating 280 acres of land. Each of these association claims is described with particularity and, had there been no prior location, the facts essential to a valid

location are alleged. Defendants further allege that, since locating these claims, they have held the land in peaceable possession and have expended approximately $5,000 in improving the same for mining operation.

Plaintiff, in his amended reply, admits that the placer claims described in his complaint were not located according to government system of public-land surveys, but denies each and every other allegation of the further and separate answer. In reply to the second further and separate answer, the plaintiff admits that the defendants, acting through their attorney in fact, the defendant W. H. Rowe, "attempted to locate certain claims as placer mining claims described in said separate and further answer and recorded notice thereof in the records of Josephine county, Oregon". Each and every other allegation of the answer is denied.

1. There was no evidence to sustain the allegations in the amended complaint relative to damages and the court very properly withdrew that issue from consideration of the jury.

One of the principal contentions of the appellants is that the land described in the amended complaint is so indefinite and uncertain that a sheriff could not identify the same and enforce a writ of restitution: *Security Savings & Trust Co. v. Ogden,* 123 Or. 370 (261 P. 69). Attention is directed to section 5-104, Oregon Code 1930, which in part provides:

"* * * The property shall be described with such certainty as to enable the possession thereof to be delivered if a recovery be had."

It is further urged that there is a fatal discrepancy between the descriptions of the claims as made in the original complaint and those set forth in the amended complaint and, by reason thereof, the amended descrip-

tion permitted by the court amounted to a change of cause of action.

The following plat may aid in comprehending the contention of the appellants relative to this phase of the case:

———————— Location as in original complaint.
– – – – – Location as in amended complaint.
°         Alleged location of rock monument.
x         Alleged location of junction of creeks.

■In the amended complaint the claims are described as actually staked out and marked on the ground—as shown on the above plat by the broken lines. The original complaint follows the description of the property as set forth in the posted notices. It is apparent from the record that the plaintiff, in locating these placer claims, was endeavoring to follow the contour and meander of Briggs creek. It is a natural conclusion that he desired to keep within the creek bed and to explore as he says, those "ancient bars". Like most

prospectors, he did not have with him any instruments with which to survey land and he knew not about the niceties of the law. He was neither a surveyor nor a lawyer. He was, however, undertaking in good faith to stake out and mark certain claims on which he had discovered gold in paying quantities. Some of the claims actually marked out on the ground by him were not accurately described. We think it a fair inference that he was not sure about the direction in which Briggs creek flowed. As a matter of fact it flowed in a southwesterly direction. In describing some of the claims in the posted notices, the plaintiff failed to move up the southern boundary line so as to follow the contour of Briggs creek. In other words, he failed to accurately describe the claims as actually marked out and identified. We think it was within the sound discretion of the court to permit the amendment. There was no change in the cause of action. As stated in 19 C. J. 1107:

"An insufficient description may afford enough to amend by, so that an amendment sufficiently describing the property will not amount to setting up a new and distinct cause of action for the recovery of different property."

■■ It is true that the evidence fails to tie these claims to any government corner, yet such failure does not of itself invalidate the claims. They may be located by reference to monuments and natural objects. The Discovery claim is thus described:

"Elkhorn or Discovery claim, location notice of which is recorded at page 113 of volume 33, Mining Records of Josephine County, Oregon, and bounded and described as follows:

"Beginning at a point 100 feet south of a monument of rock, situated near the junction of Briggs creek and Elkhorn creek in section 24, Tp. 36, R. 9 west; thence 660 feet in an easterly direction to the S. E. corner;

thence 1,320 feet in a northerly direction to the N. E. corner; thence 660 feet in a westerly direction to the N. W. corner; thence 1,320 feet in a southerly direction to the point of beginning and the southeast corner.''

The beginning point in the above description is definite and certain for there is evidence tending to show that this pile of rock situated near the junction of these two small mountain creeks had been for many years recognized by miners as a monument. The evidence is in conflict as to the distance of the rock monument from the confluence of the two creeks, but the plaintiff testified that it was approximately ten feet west therefrom. Certainly there would be no difficulty in locating the confluence of the streams, as there is evidence tending to show that this group of Elkhorn placer claims was situated in section 24, township 36 south, range 9 west and in section 19, township 36 south, range 8 west, of the Willamette meridian in Josephine county, Oregon. The question as to whether the rock referred to constituted a monument was submitted to the jury as a question of fact and its finding in reference thereto is conclusive.

The plaintiff in his posted notices in describing Elkhorn No. 1, on the east of the Discovery claim, had as a beginning point ''660 feet in an easterly direction from the junction of Briggs and Elkhorn creeks''. Such description failed to take into consideration the contour or meander of Briggs creek and was not in keeping with the location of the southwest corner of the claim as actually established and marked on the ground. Hence, the amendment to conform to the facts that the ''southwest corner of Elkhorn No. 1 claim is 660 feet east and 100 feet north of said rock monument''. The beginning point of Elkhorn No. 2 in the posted notice was ''1,320 feet in an easterly direction from the junc-

tion of Briggs and Elkhorn creeks'', but in the amended complaint the southwest corner of this claim was described as ''1,320 feet east and 660 feet north of said rock monument''. Thus it was that the contour of Briggs creek was followed and the claim described as actually staked out and marked on the ground. The side lines of all of these claims ran north and south and the end lines east and west.

It is urged that since the rock monument is some feet west of the confluence of the two creeks and as these claims are tied either to the rock monument or the confluence of the two creeks, it must necessarily result that the side lines of several of the claims will not coincide and there will be a vacant space between them. Be that as it may, it is immaterial so far as the issues of this case are concerned. It is a question which might arise relative to the amount of assessment work performed on the claims, but it is immaterial here that the claims are not entirely contiguous. The defendants have not seen fit, in keeping with the statute (section 5-105, Oregon Code 1930), ''to specify for what particular part he does defend'', so it may be assumed that the claims of the plaintiff and those of the defendants conflict, although the evidence fails to point out in just what way they do conflict. The case was tried on the theory that these claims did conflict and it will be so considered here.

We have pointed out that in the posted notices these claims were erroneously described, but the law does not contemplate that such notices should show the precise boundaries of the claims as marked on the ground. The notices are sufficient if they contain directions which, taken in connection with such boundaries, will enable a person of reasonable intelligence to find the claims and trace their lines: Lindley on Mines (3d

Ed.), section 381, citing numerous authorities in support of the text.

■ In the instant case we think, as no doubt did the jury, that the defendants were not misled or confused by the posted notices. W. H. Rowe, an experienced miner and surveyor who was vested with power of attorney to act for the answering defendants in locating their placer claims, first went on the property in question in March, 1933, and at that time had a conversation with the plaintiff relative to the latter's eight placer claims. Witness the following testimony of Rowe on cross-examination:

"Q. What was your purpose in going to see Mr. Young?

"A. Well, I heard he had some placer ground over there for sale.

"Q. Oh, I see. You went over to see about buying some placer ground you heard he had there?

"A. Yes, sir.

"Q. Did you hear what this mine was called?

"A. Well, he called it the Elkhorn mine.

"Q. All right; and did you talk over buying it with him?

"A. We had a conversation over it; yes, sir.

"Q. Did he tell you what he had there?

"A. He said he had eight claims.

"Q. He had eight placer claims—on Briggs creek?

"A. Yes, sir.

"Q. You were at his house when you talked to him?

"A. Yes, sir.

"Q. And at that time did you arrive at any agreement or understanding?

"A. Yes, sir; we had an agreement.

"Q. He gave you an option at that time did he on those eight claims?

"A. Yes, sir."

Rowe never exercised his option to purchase these claims. Later he no doubt conceived the idea, in view

of the erroneous description in the posted notices, to locate these claims for the defendants. In other words, in the parlance of the miners, he decided to "jump the claims". Such, we think is a fair deduction from the record. The verdict of the jury is not surprising.

▆▆▆▆ Appellants contend that there can be no recovery in this action for the reason that it is not alleged nor proved that the claims of plaintiff were located according to the United States system of public-land surveys. It is conceded that the boundary lines of the claims do not coincide with government lines, but plaintiff asserts that where it is not practicable to locate according to legal subdivisions, the claims may be described by metes and bounds. Section 2331 of the U. S. Revised Statutes provides:

"* * * all placer-mining claims located after the tenth of May, eighteen hundred and seventy-two, shall conform as near as practicable with the United States system of public-land surveys, and the rectangular subdivisions of such surveys * * *."

If it had been practicable for the plaintiff in the location of the claims to conform to legal subdivisions as established by the government survey, he would be required to so locate them. The law does not contemplate, however, that the locator shall be obliged to include in his claim a large amount of waste or non-mineral land. Hence it is not required under all circumstances that claims be located according to legal subdivisions. In the instant case there is evidence tending to show a reasonable excuse or justification for not conforming to government lines. If the plaintiff had done so, an unreasonable amount of non-mineral land would have been included. It was a question of fact for the jury to determine and such issue was submitted to it under appropriate instructions: Lindley

on Mines (3d Ed.), section 448; 40 C. J. 792; *Mitchell v. Hutchinson,* 142 Cal. 404 (76 P. 55).

■ In our opinion it was not error to permit the plaintiff to state his reasons for locating claims by metes and bounds and not according to legal subdivisions. He thus testified: ''Well, Briggs creek is very crooked, of course, as we all know, and it has a deep channel, and legal subdivisions would not cover all of the pay gravel in the channel without taking in a numerous lot of the hill land that is well above the channel and practically useless for mining. To have located—to have covered those seven claims by legal subdivisions, I would have had to take in at least twelve or fourteen claims and that ground would be useless to me. I had no use for it; all I wanted was the gravel that was in there, and the custom of the country and the old properties had always been located by metes and bounds.'' This answer well shows the spirit and reason of the rule which, under certain circumstances, permits nonconformity to government subdivisions in the location of placer mines.

■ Neither do we think it was necessary for the plaintiff to allege the reasons for not conforming to legal subdivisions in the location of claims on government surveyed land: *Mitchell v. Hutchinson,* supra. If the complaint was defective in this particular, the defect was cured and the matter was put in issue by the defendants who alleged: ''* * * that said placer claims, or any of them, have not been located or described according to the government system of public-land surveys or the rectangular subdivisions thereof, although it was entirely practicable for the plaintiff to have located his said alleged placer claims according to such subdivisions or surveys * * *.'' This new matter was denied in the reply.

■ There is evidence tending to show that the claims were located in the manner alleged in the amended complaint and that the corners and boundaries of each claim were so marked that the same could readily be determined and traced. The mere fact, if it be a fact, that defendants were unable to find any stakes or to trace the boundaries of the claims is not conclusive proof that the plaintiff did not distinctly mark the boundaries. It is altogether possible that the stakes may have been obliterated or destroyed without fault of the plaintiff. Relative to obliteration of boundary markings, it is thus stated in 18 R. C. L. 1135:

"It is a well known fact that the boundaries as marked upon the ground, and the notices thereon posted, often disappear within a very short time, but there is no requirement in the law that they shall be maintained or replaced by the locator in order to keep his location good. When the location of a mining claim is once sufficiently marked upon the surface so that its boundaries can be readily traced, and all the other acts of location are performed as required by law, the right of possession becomes fully vested in the locator, and cannot be divested by the removal or obliteration of stakes, monuments, marks, or notices, without the act or fault of the locator, during the time he continues to perform the necessary work upon the claim, and comply with the law in all other essential respects."

■ ■ No error was committed in permitting the witness John Shields to testify that he sold his equity in this mining property to the plaintiff. The evidence was not offered as a basis of title but to refute the claim of bad faith as charged by the defendants. The trial court explicitly instructed the jury that the plaintiff was not basing his claim of title on a purchase from Shields, but was obliged to establish by the greater weight of the evidence that he had a valid location. Whether the

plaintiff had done those things essential to a valid location as defined by the court was properly submitted to the jury as a question of fact: *Farmington Gold-Min. Co. v. Rhymney Gold & Copper Co.*, 20 Utah 363 (58 P. 832, 77 Am. St. Rep. 913).

It would greatly extend this opinion to cover all the exceptions taken to the instructions. We have carefully examined the same and are convinced that the issues of the case were properly submitted. Indeed, the instructions are a splendid exposition of the law relative to the rights of the parties. Defendants had a fair and impartial trial and we think have no just cause to complain.

There are other assignments of error, aside from those pertaining to the instructions, but it is not believed that any of them would warrant a reversal.

The judgment of the lower court is affirmed.

KELLY and CAMPBELL, JJ., concur.

RAND, C. J., concurs in the result.