314 P.2d 842

Kathy FULLER and Kimberly G. Fuller, minors, appearing by and through Glen E. Fuller, their guardian ad litem; Glen E. Fuller, Connie J. Fuller; Jack R. Decker and Lejeune Decker, Plaintiffs and Respondents,

v.

MOUNTAIN SCULPTURE, Incorporated, a Utah Corporation; Richard K. Hatch, Ralph Maxwell, Warren M. O'Gara, and Peter M. Lowe, Defendants and Appellants.

No. 8576.

Supreme Court of Utah.

Aug. 12, 1957.

---

Peter M. Lowe, Salt Lake City, for appellant.

Glen E. Fuller, Joseph Y. Larsen, Jr., Salt Lake City, for respondent.

CROCKETT, Justice.

A canyon exposure of blue-green quartzite rock, valued as building stone, is the prize over which these parties contend. Each claims to have made prior valid mining locations on the area. The trial court found for the plaintiffs and defendants appeal.

1. A lode, or vein, is defined as any continuous zone or belt of mineral-bearing rock or other earthy matter in place in fissure or rock, or lying within well-

The challenge to plaintiffs' right to the property relates to claimed defects: in descriptions of the claims; indefiniteness of monuments; and in location notices.

In the latter part of 1954 plaintiff Glen E. Fuller discovered the stone mentioned above in a canyon known as Rock Canyon in northwestern Box Elder County. This canyon is distinguished by steep rocky walls and a small stream which courses down it southeasterly. This is an area remote from any community, but the blue-green coloring of the canyon's southern slope can be seen from the town of Park Valley, Utah. The ground in question is valueless for any purpose except mining, and is federal land open to the location of mining claims.

After removing some of the stone for use in their family home in Salt Lake City, plaintiffs decided to claim it. Glen E. Fuller, accompanied by his wife and children, the other plaintiffs, located four lode claims May 12, 1955, asserting a discovery of mineral in place as required by federal law for a lode claim location,[1] and properly placed signed notices of location on rock

defined channels and having boundaries sharply defined by rocky walls; or a continuous body of mineral that is clearly distinguished from neighboring rock and the general mass of the mountain. United States v. Iron Silver Mining Co., 128 U.S. 673, 9 S.Ct. 195, 32 L.Ed. 571; Webb v. American Asphaltum Mining Co., 8 Cir., 157 F. 203; Cole v. Ralph, 252 U.S. 286, 40 S.Ct. 321, 64 L.Ed. 567; Grand Central Mining Co. v. Mammoth

discovery monuments at the four corners and the middle of each of the four lode claims. These notices were recorded in the County Recorder's Office.

■ After giving further consideration to the matter, Fuller returned to Rock Canyon on May 14, 1955, and made a placer location [2] which encompassed the four lode claims and came within the permissive limits of the federal regulations which allow four persons to locate, as a placer claim, a total of 80 acres in two adjacent 40-acre tracts.[3] He appears to have been correct in his second determination as to the nature of the mining claim required. Although considerable difficulty is encountered in some instances as to whether a lode or placer claim should be used,[4] fortunately no such difficulty exists here. 30 U.S.C.A. § 161 provides:

"Any person authorized to enter lands under the mining laws of the United States may enter lands that are chiefly valuable for building stone under the provisions of the law in relation to placer-mineral claims."

Mr. Fuller did not procure a professional survey, but by his own devices and relying upon his sense of direction, laid out the claim partly by guesswork and in some instances by stepping distances, a not unusual practice in locating mining claims. In doing so he attempted to follow generally the contour of the canyon, and to include its adjacent hillsides and the saddle at its head. He made up his notices containing the following description:

"Eighty (80) acres in area, consisting of two contiguous 40 acre tracts, covering the south slope and face of a hillside (and other area) prominently visible from Park Valley by reason of the Turquoise colored rock visibly exposed thereon * * * entire area is covered with said stone * * *

"Beginning at Monument #1 upon which is placed this Location notice, being about 175 feet south of the campsite at the mouth of Rock Canyon— where the tall cottonwood trees are located—at the creek crossing on the west side thereof; and running thence 2,640 feet north generally along the creek

Mining Co., 29 Utah 490, 83 P. 648; Hayes v. Lavagnino, 17 Utah 185, 53 P. 1029; Morrison's Mining Rights p. 191 (16th Ed. 1936).

2. A placer location is a tract of land which contains loose or scattered deposits of mineral or other earthy matter which, in most cases, may be collected by washing or amalgamation or used without being processed or milled.

United States v. Iron Silver Mining Co., 128 U.S. 673, 9 S.Ct. 195, 32 L.Ed. 571; Webb v. American Asphaltum Mining Co., 8 Cir., 157 F. 203; Morrison's Mining Rights p. 252 (16th Ed. 1936).

3. 43 Code of Federal Regulations, Sec. 185.28. See also Snow Flake Fraction Placer, 37 Land Decisions 250.

4. See Lindley on Mines §§ 322, 419 (3rd Ed. 1914).

and up the hillside to Monument #2, consisting of stone; thence west down said hill and across creek and up other side to and beyond top of ridge to clearing to stone Monument #3, a distance of 1,320 feet; thence south down hill, 2,640 feet to Stone Monument #4; thence East 1,320 feet along the base of hill to point of beginning at this Monument # 1."

A later survey revealed that the axis of his claim, instead of being due north-south as he had thought, varied about 25 degrees west of north, and was thus oriented northwest-southeast rather than north-south, so that if the description were applied literally it would not include part of the "saddle" now in controversy.

As the law requires, Fuller marked monuments at each of the four corners of the placer claim and placed a location notice containing the above description at an appropriate place on the claim, to-wit: On a cedar tree near the creek at the mouth of the canyon. In addition to these legal requirements, he went further and posted a large sign reciting the location and the names of the locators at the mouth of the canyon, a short distance from the tree just mentioned. He recorded the notice on May 25, 1955.

Meanwhile, the defendants had become interested in the property. In June, 1955, Richard K. Hatch and Ralph Maxwell visited the area and saw the placer and lode notices and the sign posted by the plaintiffs. They also went to the Recorder's Office and examined the notices plaintiffs had filed. Hatch later surveyed the locality and during the summer and fall of 1955 the defendants made locations of similar deposits of stone on land adjacent to the west, but not encroaching on plaintiffs' claims.

On October 26, 1955, Hatch and Warren M. O'Gara went to Glen E. Fuller's office to discuss the claims in Rock Canyon. During this visit Fuller drew a sketch of the area, and indicated to them the ground included in his lode and placer claims, specifically mentioning that the part of Rock Canyon known as the "saddle" was included within his placer claim.

Later, on January 7, 1956, Hatch and Maxwell located and filed a placer claim immediately west of Fuller's claim, and oriented due north-south so that it overlapped the northwest corner of Fuller's claim which included this "saddle." They in turn assigned it to Mountain Sculpture, Inc. of which they are officers. The following April the defendants built a road from the west into their claim and began removal of stone. Consequent to this plaintiffs brought this action to enjoin them, to recover damages for stone removed and to quiet title to their placer claim. The trial

court granted judgment accordingly but refused to award damages.

The specific attacks defendants make on plaintiffs' locations are: (1) The claim is not correctly laid out in that (a) it does not conform to the rectangular subdivisions of the U. S. Survey, and (b) it is not oriented in true north-south, east-west directions, and (2) that the notice of location was technically insufficient because (a) the descriptions are faulty, and (b) the notice does not contain the names of the locators.

The federal statutes do provide that placer claims shall conform as near as practicable to the United States system of public land surveys and the rectangular subdivisions of such surveys.[5] Other federal statutes,[6] and also the statutes of our state [7] provide that the notice of the claim shall contain the names of the locators; the time of location; a description of the claim by reference to natural objects or by distinct monuments which will identify the claim and enable one to readily trace its boundaries.

◼ The purpose of the foregoing statutory requirements is obviously to mark the locator's claim as definitely as possible and give notice thereof to the public. They set up generally the form and procedure to be followed. If that purpose is accomplished, punctilious compliance with the exact letter of the law is not an indispensable requisite and minor variations therefrom will not necessarily invalidate the claim. The statutory rules are subject to variance to meet the practical exigencies confronted by prospectors. It has been held that the claim need not conform precisely to the United States Survey nor be laid out in a true north-south direction when it is confined within a narrow canyon,[8] or gulch,[9] or other topographical abnormality which would render doing so impractical; nor is the locator compelled to include in his claim land not fit for mining.[10] Likewise, he is not required to run his lines over prior located claims.[11] Plaintiffs' claim is in a compact and substantially rectangular form and comes as close to conforming to the United States land surveys and true points of the compass as is reasonably practicable, which is all the law requires.

◼ In regard to the sufficiency of the notices, it is to be observed that the same tolerance as to the form of the claim just discussed is also indulged with respect

5. 30 U.S.C.A. § 35.

6. 30 U.S.C.A. § 28.

7. §§ 40–1–2, 40–1–3, U.C.A. (1953).

8. Mitchell v. Hutchinson, 142 Cal. 404, 76 P. 55.

9. Steele v. Preble, 158 Or. 641, 77 P.2d 418; Wiesenthal v. Goff, 63 Idaho 342, 120 P.2d 248.

10. Young v. Papst, 148 Or. 678, 37 P.2d 359.

11. Dripps v. Allison's Mines Co., 45 Cal. App. 95, 187 P. 448; Snow Flake Fraction Placer, 37 L.D. 250.

thereto. The notices in question definitely singled out Rock Canyon and described the land claimed by specific reference to the creek and campsite at the mouth of the canyon. Although the corner monuments may have been more satisfactory, as pointed out by the trial court, it appears that such monuments as "a cedar tree," "a stone with a stick and red flag on it," "a large white rock with a cedar tree by it," and a "cedar tree with a circle of rocks around it," were the best practical markers available. These monuments, taken in connection with directions and measurements giving the approximate length and breadth of the claim, would enable a person of ordinary intelligence to locate the boundaries with reasonable accuracy and without difficulty.[12] The evidence supports the trial court's finding that it was Fuller's intention to so orient his claim as to include all of this type of building stone exposed in the canyon and the saddle at its head. Concerning the claimed lack of names of the locators on some of plaintiffs' notices, it may be that some of the names had been obliterated due to the weather. At any rate, the finding of the trial court in favor of the plaintiffs resolves the issue in their favor, and there is no basis upon which it could properly be disturbed.

■ It is further to be observed that the defendants, through their conversation with Glen E. Fuller and their observations of the notices and monuments in Rock Canyon, had actual notice that the plaintiffs claimed the area in dispute. Therefore, even if there had been deficiencies of a technical nature in plaintiffs' location, that furnishes no succor to defendants in attempting to establish their claim. It is well settled that minor defects in the notices, descriptions, or procedure will not defeat the location of a prior claimant at the instance of one having actual notice.[13]

Plaintiffs cross-appeal, assigning as error the failure of the trial court to award them damages for stone taken from their claim by defendants. This poses the question whether the proof on that issue is such that all reasonable minds would find from the preponderance of the evidence in accordance with their claims; or conversely, could reasonable minds fairly remain unconvinced that plaintiffs had so established their counterclaim.

12. Young v. Papst, 148 Or. 678, 37 P.2d 359; Bair v. Anderson, 98 Colo. 532, 58 P.2d 484; Eilers v. Boatman, 3 Utah 159, 2 P. 66; Wells v. Davis, 22 Utah 322, 62 P. 3; Bonanza Consolidated Mining Co. v. Golden Head Mining Co., 29 Utah 159, 80 P. 736, 738. See also Cranford v. Gibbs, Utah, 260 P.2d 870.

13. Steele v. Preble, 158 Or. 64, 77 P.2d 418; Springer v. Southern Pac. Co., 67 Utah 590, 248 P. 819; Independence Placer Mining Co., Ltd. v. Hellman, 62 Idaho 180, 109 P.2d 1038, 1042; Kramer v. Sanguinetti, 33 Cal.App.2d 303, 91 P. 2d 604.

392

■ Notwithstanding the fact that considerable tolerance must be indulged in favor of the findings of the trial court because of its advantaged position in immediate contact with the trial and the parties, it nevertheless may not obdurately refuse to find facts which are established by credible and uncontradicted evidence. It seems clear that the parties hereto were primarily concerned with the contest over the ownership of the property, and being so engrossed, neither side gave much concern to the proof on the issue of damages. Glen E. Fuller was the only witness who testified for plaintiffs on the matter, and he was, of course, to put it quite gently, an interested witness. In view of the prerogatives of the trial judge in evaluating testimony, we cannot predicate error upon his refusal to make findings upon the testimony of Mr. Fuller.[14] In addition thereto, his testimony can be characterized as somewhat nebulous because the amounts of stone he stated as being removed were admittedly mere estimates based on observations of the appearance of the deposits before and after he had seen some truckloads of similar stone being hauled from the area. This, however, does not conclude the question raised on the cross-appeal, because the defendants themselves, under cross-examination, admitted that they had removed some stone from the disputed area, although they were neither definite nor in accord as to the amounts taken. Furthermore, the trial court stated in the discussion at the conclusion of the trial, "I guess there is no doubt that somewhere along the line defendants took some stone from this area."

■ This court has previously announced that when there is wrongful injury and substantial damage, just compensation should be awarded therefor.[15] Fuller testified that the stone was worth $30 per ton at the site, and the defendants did not discredit this either by cross-examination or contrary evidence. An analysis of the record discloses that, based upon such value, and under the defendants' own admissions, there was stone to the value of at least $500 removed by them. It is therefore necessary that the judgment be modified to include an award of that amount to the plaintiffs.

Affirmed as modified. Costs to respondents (plaintiffs).

McDONOUGH, C. J., and WADE, J., concur.

HENRIOD, J., concurs in the result.

14. See Cottrell v. Grand Union Tea Co., 5 Utah 2d 187, 299 P.2d 622. See also In re Swan's Estate, 4 Utah 2d 277, 293 P.2d 682.

15. Hill v. Varner, 4 Utah 2d 166, 290 P. 2d 448.

WORTHEN, Justice (concurring and dissenting).

I concur in affirming the action of the trial court in quieting plaintiffs' title to the claims in controversy, but I find myself unable to agree with the main opinion that $500 is the proper measure of plaintiffs' damages under the evidence.

Plaintiff, Glen E. Fuller, testified that from his observations of defendants' trucks loaded with rock moving from the vicinity and from his examination of the premises before and after the removal of rock, he would state that it was his opinion that *80 tons of rock* had been removed by defendants from his claims. Defendants admitted moving rock from plaintiffs' claims. One of the defendants, Ralph Maxwell, testified as follows:

"Q. And, as a matter of fact, most of the green rock has been loaded from a point east of those stakes, hasn't it?
A. Yes, a good share of it."

The record discloses that *"those stakes"* mentioned in the above question were in the west boundary line of plaintiffs' claims.

Another defendant, Richard K. Hatch, was asked:

"Now, Mr. Hatch, I'm going to try to ascertain from you how much of this turquoise green stone has been removed from the area that's in controversy, in the placer claim shown on Exhibit 16. * * *"

After some discussion between Mr. Fuller and Mr. Hatch as to Hatch's deposition taken by Fuller Mr. Hatch testified:

"There might have been one load at the most of green stone taken out. As far as I recollect, there was at that time about twenty-five ton of stone. I think at this time there might be around *fifty ton of stone taken* from the green quartz area."

Since plaintiff testified that the stone was irreplaceable and was worth $32.50 per ton at the quarry, less $2.50 per ton road building costs, I would direct the lower court to enter judgment in favor of plaintiffs and against defendants for $1,500 plus interest thereon from July 1, 1956. I think that plaintiffs' alleged laxity as to boundaries, monuments, directions, etc. should defeat only his claim to punitive damages and not to compensation for rock actually removed from the claims since defendants have unjustly received the benefit from the removal of that rock.