HALE & NORCROSS GOLD AND SILVER MINING COMPANY, APPELLANT, *v.* STOREY COUNTY ET AL., RESPONDENTS.

Possessory rights to mining claims are property, and as such, taxable.

Taxation of the possessory right is not in violation of the section of the Organic Act which prohibits the Territorial Legislature from taxing the property of the United States.

The object of that section was to protect the Government and not to prevent the taxation of settlers on public lands.

The words "mining ground," when used in a deed, have a technical meaning. They refer to that interest which a mere occupant of the mine has in the same. They are not the words used when a fee simple or leasehold interest in real estate is to be conveyed.

The words used by the Assessor in assessing the interest of plaintiffs, sufficiently indicate that the possessory interest only, and not the fee in the land, is taxed.

APPEAL from the District Court of the First Judicial District of the State of Nevada, Storey County, Hon. CALEB BURBANK presiding.

The facts are stated in the opinion of the Court.

*Baldwin & Hillyer*, for Appellants.

*Dighton Corson*, for Respondent.

The only cases cited were 12 Cal., *State of California* v. *Moore*, p. 56; and 22 Cal., *People* v. *Morrison*, p. 78; sec. 6 of Organic Act; sec. 1, art. X. of Constitution, and the various sections of the Revenue Act bearing on the points in the case.

Opinion by BEATTY, J., full Bench concurring.

This was a complaint in equity filed by the plaintiff for the purpose of restraining the officers of Storey County from the collection of certain taxes which are alleged to be illegally assessed.

The defendants demur on the ground that the complaint does not state facts sufficient to constitute a cause of action.

But there is a stipulation in the transcript that the sole question to be raised or determined in the case is the "legality of the tax imposed under the revenue laws of the Territory of Nevada."

With this stipulation on the record, we will not inquire into the propriety or legality of the remedy sought in this case, but will confine ourselves to the question of the legality of this tax and the manner of its levy.

With regard to the legality of the tax, two main questions

are presented.   The first and most important one is, can the possessory rights of miners to mining ground belonging to the United States be taxed?   The objections to the taxation of the mines are, that the title of the real estate is in the Government; that the Legislative Assembly was by express enactment (see sec. 6 of Organic Act) prohibited from imposing taxes on property of the United States; and that the interest of the miner is not such property as is, in its nature, taxable; that it is too intangible and unsubstantial to be the subject of taxation.   It has been said that the miner is a naked trespasser, without claim of title, a licensee or else a strict tenant at will—not entitled to notice to quit, and therefore having no valuable estate.   That having no estate which is under his own control, but being as it were, a mere occupant by sufferance of the Government property, he has no property therein, and therefore his interest cannot be taxed as such.

By the strict rules of the common law, as it formerly existed, an action of ejectment could not be maintained upon the demise of a mere tenant at will, a licensee, or a trespasser on the King's Government land.   But the common law is a law of reason and common sense.   It adapts itself to the circumstances and necessities of the community where it is introduced.   Here the policy of our Government has been peculiar; owning vast bodies of mineral lands, it has encouraged the working of those mines by its citizens, but has steadily refused to make a grant of any kind of estate to the miner.   Individuals have made large investments in mines and improvements, whilst the entire estate in the lands remains in the Government.   The Government could not, like an ordinary proprietor, protect its licensees by the institution of suits against trespassers.   From the necessity of the case, these licensees (we think they come nearer licensees than tenants) must have legal protection.

The Courts and the laws adapting themselves to the necessity of the case, and governed by rules of common sense, reason and necessity, have universally treated the possessory rights of the miner as an estate in fee.   Actions for possession, similar to the action of ejectment, actions of trespass, bills for partition, etc., are constantly maintained.

Such interests are held to descend to the heir, to be subject to sale and execution, and to be assets in the hands of executors and administrators for the payment of debts. This general proposition will hardly be disputed, that a Territorial Legislature may tax any species of property, whether real, personal, or mixed, corporeal or incorporeal, so far as they are not restrained by the Organic Act. It appears strange to us that that which is so far property as to be subject of litigation in an action wherein the judgment, if for plaintiff, is for restitution of possession, is so intangible when you come to to enforce collection of revenue, that it cannot be reached by process of law.

We are referred to the language of the learned Justice who wrote the opinion in the case of *The People* v. *Morrison* (22 Cal. p. 78), as an authority for the proposition that Congress intended to exempt possessory claims from taxation in order to encourage the settlement of the public lands, to bring them into market, to expedite the sale thereof, and thereby afford revenue to the Government. Such a law (we mean one exempting all settlement rights from taxation) might encourage the *settlement* of public lands, but we are not so sure that it would facilitate their sale. If, prior to sale and payment for them, the settler is free from taxation, and liable to taxation thereafter, he would, unless very patriotic, endeavor to delay the sale of the land he was occupying and avoid the payment as long as possible to save taxes. The Government did at one time attempt to protect the settlers on public land from taxation, by providing that no State should levy taxes on land sold by the Government for a period of five years after sale. But that policy was abandoned many years since.

We think of late years the Government has only attempted to protect itself, and left the States and Territorial Governments to regulate the subject of taxes among their own citizens according to their own views of justice and propriety.

The next point to be considered is, does the description given by the Assessor conform to the requirements of the statute, and more especially does the description distinguish between the possessory right, which is liable to taxation, and the ultimate right to the land, which is in the Government?

The assessment is in this form :

" Hale and Norcross Mining Company : 400 feet of mining ground, situated, etc."

Here follows description, by metes and bounds.   Then comes :

Value of real estate.........................$150,000
Value of improvements.....................  25,000
Value of personal property.................   2,400

Total ...................................$177,400

Here is a description of the property which we believe is not claimed to be seriously defective, except that it does not point out whether the real title to the land, or the possessory title *only* has been assessed.

The statute defines what real estate means, and where the value of $150,000 is attached to the property, we have only to look into the statutes of 1864, page 38, section 3, to see that real estate means only " the ownership or claim to, or possession of, or right of possession to any lands or mines in the Territory."    As the property is described as mining ground, then the real estate taxed at $150,000, was " ownership or claim to, possession of, or right of possession " to the mine described.

The next line as clearly points out the improvements which are situated on this same piece of mining ground ; and shows the Assessor intended to assess these improvements to the plaintiffs, who owned or claimed the mine.

But does this assessment show that the possessory title only is assessed ?   It appears to us it does.   In the first place, we think the Court must take judicial notice of the facts which are known to all intelligent persons, and are a part of the history of the Territory—that the Government originally owned all the land in the Territory, and has never parted with the title to any which is known to be mineral land.   Therefore the legal presumption arises that a mine in the Territory (now State) of Nevada, belongs to the Government, and the occupants have only a possessory title.   Therefore an assessment to an individual or company of so many feet of mining ground, clearly conveys the idea of a possessory right.   The language does not convey to any one having a knowledge of the history

of the country the idea of an ultimate right to the land on which, or in which the mine is located.

Indeed the most apt and fit words seem to have been used by the Assessor to convey clearly his meaning. In all ordinary conveyancing, the word "land" is used to designate a certain portion of the earth's body which is the subject of sale. And if one here were the owner of a body of land containing a mine, or ledge of silver-bearing ore, in selling it, any convey-ancer of common intelligence would use the word *land* when describing the thing granted. But here all conveyancers use the word *ground* when making deeds for possessory claims. "Possessory claim" to the land or ground is hardly ever intro-duced into mining deeds. So many "feet of mining ground," is the term almost always used.

This phrase is familiar to everybody; we know the moment we read the phrase, that it means the right of the occupant on the public lands. When the Assessor avoided the term *"land"* and used the term *"ground,"* which has become a technical word in Nevada deeds, he used the very word he should have used in describing the interest to be taxed. We are told, how-ever, this view of the case is in conflict with the decision in 22 Cal., to which we have before referred. There the term "*land*" is used, and in that State a large amount of land is owned by private individuals interspersed among the public lands in every part of the State. The term there used would indicate that the value of the land, free of incumbrance, was assessed. Clearly, the settler was not bound for such an amount. The utmost value of his interest was the worth of the land, *less* what he would have to pay the Government for the title thereto.

The judgment of the Court below is affirmed.