STENFJELD et al. v. ESPE et al.

(Circuit Court of Appeals, Ninth Circuit. May 24, 1909.)

No. 1,631.

MINES AND MINERALS (§ 27*)—LOCATION OF MINING CLAIMS—ASSOCIATION PLACER CLAIMS—MANNER OF LOCATION.

An association placer mining claim cannot be located over other prior claims, so as to include within its boundaries and appropriate a number of unlocated and noncontiguous fractions lying between such prior claim.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. § 64; Dec. Dig. § 27.*]

In Error to the District Court of the United States for the Second Division of the District of Alaska.

The defendants in error brought an action in ejectment to recover possession of a certain portion of the land included within an association placer mining claim located by eight locators and named the "Hercules No. 1 Association Claim," covering in its total area 179 acres. The eight locators originally located on January 1, 1904, several association claims, one of which was known as the "Hercules No. 1," of 160 acres, adjoining which was the Hercules No. 6, both of which covered in part the land subsequently embraced in the amended location which the locators made on March 14, 1906. The plaintiffs in error in their answer to the complaint of the Hercules No. 1 association claim alleged that they were in the possession under a valid prior location of a small fraction consisting of 4.797 acres situated within but not contiguous to

the boundaries of said Hercules No. 1 association claim. The said fraction is marked "A," and the boundaries of the association claim are indicated by the figures 37, 38, 39, and 40 on the plat which follows.

In the location notice of the Hercules No. 1 as amended, Newton No. 6 and the Snowhill Top claim were expressly admitted to be prior locations and were excluded. On the trial of the case, No. 7 on Newton, the Roosevelt, the Bon Voyage, the North Pole, and the Happy Bench were admitted to be prior valid locations, and it was proven without dispute that the Homestake group and the Collins or Mercy group were also prior locations. There remained subject to appropriation within the boundaries of the Hercules No. 1, aside from the ground which is in controversy in this suit, claim No. 5, a small fraction below the North Pole claim, a small fraction between the Homestake and the Collins group, a small fraction between the Homestake and the North Pole, the two claims northwest of the Collins, and the Sue fraction. The plaintiffs in error on the trial of the case raised the question of the right of the eight locators of the Hercules No. 1 claim to surround a number of noncontiguous fractions in an association location, and requested of the trial court an instruction that the law does not permit one mining location to cover two or more noncontiguous tracts, and that, if the location of the Hercules No. 1 was made to embrace two or more noncontiguous tracts, the whole location was void, and each separate or noncontiguous tract remained open for location and appropriation. The refusal of the court to so instruct is assigned as error.

T. M. Reed, John Rustgard, and C. M. Thuland, for plaintiffs in error.

Chas. E. Naylor and G. J. Lomen (Campbell, Metson, Drew, Oatman & Mackenzie and E. H. Ryan, of counsel), for defendants in error.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

GILBERT, Circuit Judge (after stating the facts as above). Rev. St. § 2330 (U. S. Comp. St. 1901, p. 1432), provides that:

"Two or more persons or associations of persons having contiguous claims of any size, although such claims may be less than ten acres each, may make joint entry thereof; but no location of a placer claim made after the ninth day of July eighteen hundred and seventy, shall exceed one hundred and sixty acres for any one person or association of persons."

The language of this statute is plain. It authorizes an association location of contiguous claims only. The clear implication is that claims not contiguous may not be joined in a single location. That this is so is indicated not only by section 2330 but by other provisions of the mining laws. Thus, it is provided that the location must be "distinctly marked on the ground so that its boundaries can be readily traced." It is admitted that the fraction in controversy was not marked upon the ground as a distinct parcel, but it is claimed that, by virtue of an association location made to include 179 acres, that parcel, although segregated from other claims and surrounded by valid locations, was brought within the location.

The statute contemplates the location of real claims, not fictitious claims. In the theory of the law the association placer claim of 160 acres consists of eight contiguous placer claims of not more than 20 acres each. It is impossible in this case that the claims shall be contiguous unless some, if not the majority thereof, are located wholly upon valid subsisting placer claims previously located and in the lawful possession of other persons. "Because," said Judge Hawley, "mining claims are not open to relocation until the rights of a former locator have come to an end, two locations cannot legally occupy the same space at the same time." Porter v. Tonopah & North Star Tunnel & Development Co. (C. C.) 133 Fed. 756. In Del Monte Min. Co. v. Last Chance Min. Co., 171 U. S. 55, 18 Sup. Ct. 895, 43 L. Ed. 72, the court, in answering the question whether any of the lines of a junior lode location may be laid within or across the surface of a valid senior location, alluded to the fact that it will often happen that lode locations which do not overlap are so placed as to leave between them irregular parcels of ground, and that a discoverer of mineral on such a parcel is unable to locate the same without making his end lines parallel, and unless he is permitted to place his end lines on territory already claimed by prior locators, and sustained the right to so invade land already located for the mere purpose of location. In so holding the court was controlled by the consideration that the location on the surface is not made with a view of getting benefits from the use of the surface, the purpose being to reach the vein hidden in the depths of the earth, and the purpose of the location being to measure rights beneath the surface. Said the court:

"The area of surface is not the matter of moment; the thing of value is the hidden mineral below, and each locator ought to be entitled to make his location so'as to reach as much of the unappropriated, and perhaps only partially discovered and traced, vein as is possible"

—and the court ruled that in order to comply with the statute, which requires that the end lines of the claim shall be parallel, and in order to secure all the unoccupied surface to which it is entitled, with all the underground rights which attach to possession and ownership of the surface, a junior locator may place an end line within the limits of a prior location. This ruling is based upon considerations which have no application whatever to placer locations. In the placer mine the surface is the thing located, and the possession of the surface is absolutely essential to the mining operations. In order to obtain the surface that is open to location, there is no necessity to invade the surface of other claims, or to place boundary lines thereon.

We find no decision of any court bearing directly upon the question. In the Land Department the rulings have not been harmonious. In Grassy Gulch Placer Claim, 30 Land Dec. Dep. Int. 191, it was held that there is no authority under the mining laws and regulations for the location of a placer claim in two or more noncontiguous tracts, and that the Land Office could not consider the placer location there in question as a single location, but must regard it as seven separate locations. Although that decision has not been expressly overruled, its doctrine was modified in Mary Darling Placer Claim, 31 Land Dec. Dep. Int. 64, in which the Secretary approved for patent a mineral entry of an association placer claim which was cut in twain by a patented lode claim, and in Rialto No. 2 Placer Mining Claim, 34 Land Dec. Dep. Int. 44, it was held that a mineral location is not of itself such an appropriation of land as to prevent the inclusion of the same land in another location, and that such prior locations have not the effect to separate the land into noncontiguous tracts as the term is understood and used in the administration of the public land laws. To this proposition we are unable to assent. A valid mining location, although unpatented, is a grant, and the estate enjoyed is in the nature of an estate in fee. It is an appropriation of land by the locator to the exclusion of all others. No reason can be suggested for permitting a junior locator of a placer claim to lay his lines across a claim already located. "Where there is a valid location of a mining claim, the area becomes segregated from the public domain and the property of the locator." St. Louis Min. Co. v. Montana Min. Co., 171 U. S. 650–655, 19 Sup. Ct. 61, 43 L. Ed. 320. There is no reason why the locators of the Hercules association claim could not have made separate locations of the separate parcels which remained open to location within the exterior boundaries which they established. The plaintiffs in error found the land in controversy unmarked and unoccupied. Surrounding it they found other valid claims. They had the right to assume that the land was vacant and unappropriated. It would be an intolerable burden if the prospector who finds an unoccupied parcel of land thus surrounded by other locations were required to search the surrounding country to ascertain whether the locators of an association claim had not placed four posts, one-half

a mile distant from each other, with the intention of appropriating segregated fractions of land lying between the boundaries of subsisting claims.

The judgment is reversed, and the case remanded for a new trial.