## TRINITY GOLD DREDGING & HYDRAULIC CO. v. BEAUDRY.

(Circuit Court of Appeals, Ninth Circuit. May 24, 1915.)

### No. 2478.

1. MINES AND MINERALS ⊙⟿54—OPTIONS—CONSTRUCTION—RESCISSION.

B. gave W. an option to purchase certain mines and mining claims, of which some were described as patented, others as unpatented, and still others as having receiver's receipts issued. The agreement recited that B. was the sole owner and in possession of certain gravel mines, including such mining claims, and provided that W. would take possession, expend a specified sum in improvements, and pay all expenses for prospecting and examining the mines, and that on proper demand B. would make a good and sufficient deed for all of the properties free from incumbrances. The form of deed was agreed upon, and the executed instrument placed in escrow; but it did not appear whether it was a quitclaim or a warranty deed. A supplemental agreement extending the time for payment provided that W. should pay all expenses in connection with contests then pending in the land office, and perform all assessment work necessary to hold and maintain the possessory right and title to the unpatented claims. Patents to certain of the claims were denied on contests, on the ground that the claims were of no value for mineral purposes, because the minerals had become exhausted, and W.'s successor in interest claimed that this was a breach of the agreement, entitling it to rescind. Held, that the possessory title alone was being dealt with, and B.'s obligation extended only to a conveyance of his possessory title, and not to a fee simple or ultimate title, and the failure to acquire patents, because the minerals had been exhausted, did not constitute a breach for which rescission might be had, as a mining claim is possessory only in character, when held by location, and the performance of the necessary annual work, and is distinct and apart from a fee-simple or absolute title, and is so considered and treated by those dealing therewith.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. §§ 149–152; Dec. Dig. ⊙⟿54.]

2. MINES AND MINERALS ⊙⟿29—NATURE OF MINING CLAIMS.

When an individual, entitled to the benefit of the statute relative to the acquisition of mining claims, has made a location in accordance therewith, and gone into possession, such claim, when perfected, is property in the highest sense of that term, which may be bought, sold, and conveyed, and will pass by descent.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. §§ 66–72; Dec. Dig. ⊙⟿29.]

---

⊙⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Appeal from the District Court of the United States for the Second Division of the Northern District of California; Wm. C. Van Fleet, Judge.

Action by the Trinity Gold Dredging & Hydraulic Company against Angele Beaudry, individually and as executrix of Frederic Beaudry, deceased. Judgment for defendant, and complainant appeals. Affirmed.

On July 21, 1906, Fred Beaudry, of the first part, and George H. Whitelaw, of the second part, entered into an agreement whereby Beaudry, in consideration of $250,000, to be paid in specified installments, granted to Whitelaw an option to purchase certain mines and mining claims, 21 in number, designated by name, of which 8 were described as patented, 8 as unpatented, and 5 as having receiver's receipts issued. By way of inducement to the agreement, it is recited that Beaudry was "the sole owner and in possession of certain gravel mines," including the mining claims and properties described in the option. Among other stipulations, the second party agreed to enter into possession of the mines and properties (except a certain house, barn, and yard), to expend not less than $10,000 in improvements in a designated manner, and to pay all expenses for prospecting and examining the mines and the title of said properties; the party of the first part reserving the right to one Theodore Ebendorf to prospect on the property until $62,500 of the purchase price. should be paid, and agreeing, on proper demand, to make to the second party "a good and sufficient deed for all of said properties, free from all incumbrances." By supplemental agreements and modifications of the option, the time was extended for payment, making the last installment of $52,500, with interest at 8 per cent. per annum from January 10, 1911, to fall due April 10, 1911. It was further provided that the second party should pay to the first party, on October 10, 1910, $700 advanced in the matter of securing patents to the Long Gulch and the Mule Creek Ridge placer mining claims; that the second party should pay all expenses, fees, charges, and costs in connection with contests in the United States land office, and upon appeal to the Commissioner General and the Secretary of the Interior, and perform all assessment work necessary to be done in order to hold and maintain the possessory right and title to the unpatented claims. Time was made of the essence of the contract, and forfeiture provided for in case of default in payment of any of the amounts specified. The last modification agreement bears date December 11, 1909. On December 11, 1911, Beaudry gave formal notice to the second party that he would insist upon exact payment of all sums remaining due upon the agreement, aggregating $82,207.05, by January 1, 1913, $32,207.05 thereof to be paid January 1, 1912, and that in case of default a forfeiture would be declared.

The Trinity Gold Dredging & Hydraulic Company has succeeded to the interest of Whitelaw in said agreement, and, Beaudry having died, his widow, Angele Beaudry, has been duly appointed executrix of his last will and testament. It appears from the bill of complaint that Angele Beaudry, both in her representative and in her individual capacity, on December 1, 1912, caused to be served upon the Trinity Company another notice requiring payment in full by January 1, 1913, on condition of terminating and exacting forfeiture should the demand not be complied with. It is further alleged that the Trinity Company, the complainant, on December 31, 1912, rescinded the contract, and caused to be served upon the executrix a notice of such rescission, on the ground that, after contest and hearing before the Land Department, the department had refused to issue patents to some of the unpatented claims because the same were of no value for mineral purposes on account of having become exhausted for such purposes, and as to others, involving claims upon which receiver's receipts had issued, that the contests had not been concluded.

The facts appear to be that, at the date of entering into the original agreement, Beaudry had applied to the register and receiver of the land office for patents upon all the contested claims; that during the months of August, September, and October, 1908, the government entered contests against the

applications on the ground that the applicant sought to acquire title because of the value of the timber contained on said claims, and not for the mineral deposits; that, as to the Long Gulch claim, unpatented, the register and receiver, on May 25, 1910, decided against the applicant; that on appeal to the Commissioner General the decision was affirmed April 17, 1911, and on further appeal that the decision of the Commissioner General was affirmed by the Secretary of the Interior May 23, 1912, and Beaudry was denied patent; that the Mule Creek Ridge mining claim, unpatented, took practically the same course, varying only as to the dates of adjudication in the Land Department, and patent was denied by the Secretary of the Interior September 13, 1912; that as to several other claims, including the Greenhorn group, for which receiver's certificates had issued, contest is still pending in the Department of the Interior.

The bill of complaint was challenged by motion to dismiss, which motion was sustained, and decree entered accordingly. The Trinity Company appeals.

Edward J. McCutchen, Warren Olney, Jr., Charles W. Willard, and J. M. Mannon, Jr., all of San Francisco, Cal., for appellant.

Thomas B. Dozier, of San Francisco, Cal., for appellee.

Before GILBERT and ROSS, Circuit Judges, and WOLVERTON, District Judge.

WOLVERTON, District Judge. [1] As to the patented claims there is, and can be, no controversy. But it is contended by appellant, based upon the recitation in the agreement that Beaudry was "the sole owner and in possession of" the mining claims, and the stipulation that Beaudry should make "a good and sufficient deed for all said properties, free from all incumbrances," that he contracted to convey a perfect patent or fee simple title to all of said mining claims, whether designated as patented or unpatented, or as being held by receiver's certificate, and that, by reason of the failure of Beaudry or of the defendant to secure the patents to a portion of said claims, they had breached the contract, for which complainant was entitled to rescind. This depends upon the nature of that species of real property commonly known as mining claims.

[2] Congress has provided how a mining claim can be acquired. In general, it may be acquired by a discovery of mineral, particularly of gold, silver, or copper, and the like, upon the public lands, and by staking the same off or marking it upon the ground, so that the boundaries may be plainly designated and readily ascertained. The right of continuous occupation may be maintained by keeping up the assessment work prescribed by law, and this without incurring the obligation towards the government of buying and paying for the land. When an individual entitled to the benefit of the statute has made location in accordance therewith, and gone into possession, he is said to be the owner and in possession of the mining claim thus located. Such a claim, when perfected, is declared to be "property in the highest sense of that term, which may be bought, sold, and conveyed, and will pass by descent." Sullivan v. Iron Silver Mining Co., 143 U. S. 431, 434, 12 Sup. Ct. 555, 556 [36 L. Ed. 214]. The usual mode of conveyance is by deed. In its accepted significance, a mining claim relates to—

"that portion of the public mineral lands, which the miner takes up and holds in accordance with mining laws, local and statutory, for mining purposes."

Mt. Diablo Mill & Mining Co. v. Callison et al., 17 Fed. Cas. No. 9,886; Morse v. DeAdro, 107 Cal. 622, 40 Pac. 1018.

It is so recognized by Congress. Forbes v. Gracey, 94 U. S. 762, 766, 24 L. Ed. 313. It is separable from the fee, for Congress has provided for the existence of an exclusive right to the possession, while the paramount title to the land remains in the United States. Belk v. Meagher, 104 U. S. 279, 283, 26 L. Ed. 735.

"When a location is perfected, it has the effect of a grant by the United States of the right of present and exclusive possession." Manuel v. Wulff, 152 U. S. 505, 511, 14 Sup. Ct. 651, 653 (38 L. Ed. 532).

It has been held, further, that the words "mining ground," used in a deed, have a technical meaning, and refer to that interest which a mere occupant of the mine has in the same. Hale & Norcross Gold and Silver Mining Co. v. Storey County et al., 1 Nev. 104. And that a purchaser of a mining claim only acquires such right or title from his vendor as the latter had at the time of purchase. Waring v. Crow, 11 Cal. 367. A mining claim is therefore possessory only in character, where held by location simply, and the performance of the annual work necessary to entitle the locator to continue in possession. It is distinct and apart from a fee-simple or absolute title to the land, and is so considered and treated by those who have occasion to deal therewith.

In entering into the agreement for the option, and in all subsequent modifications thereof, the parties manifestly dealt with all unpatented mining claims specified therein in the light of this understanding of the significance of a mining claim. The agreement not only designated these mining claims as unpatented, or held by receiver's certificate, as the case might be, but required the second party to pay all expenses for prospecting and examining the mines and the title to said properties. And in the modification of date December 11, 1909, the second party further agreed to pay all expenses, fees, charges, and costs in connection with the contests in the United States Land Office, and to perform on each and every and all unpatented placer mining claims the annual assessment work, labor, and improvements required by law and the rules and regulations of the Department of the Interior to be done to maintain the possessory right and title thereto. Thus it appears that they were dealing with the possessory right and title to the claims, and not with the ultimate and fee-simple title to the land upon which the claims were located, and when it was stipulated that the final conveyance should be by deed, it was intended that the conveyance should be of the mining claims, and not of the ultimate title to the land, which was known to the parties to rest in the general government.

This conclusion is all the more apparent in consideration of the fact that the unpatented claims, including those standing at receiver's receipt, were in actual contest by the government, when the latter modification was made and entered into. And, again, the payment of the final installment of the consideration, or any installment thereof, was in no way made dependent upon the outcome of the government's contest. If it had been considered that such outcome was at all vital

to the contractual relations of the parties, it is singular, to say the least, that no stipulation should have been made touching it at the time the plaintiff obligated itself to bear the expenses of the contests to protect the claims. The form of the deed was agreed upon, and the executed instrument was placed in escrow, and so remains for delivery when the plaintiff shall have complied with the agreement; but what the form is, whether quitclaim or warranty, is left without mention in the pleadings or elsewhere. This is a pertinent fact, with a bearing respecting the intendment of the parties, and we may reasonably assume that, if the deed in escrow were in form a warranty of title in fee, the plaintiff would have so stated in its bill of complaint. Furthermore, the bill nowhere alleges that the unpatented claims were not located upon mineral lands belonging to the government, and that such locations were not made in accordance with the laws and rules and regulations of the Department of the Interior. But it does show that the contest of the government was based upon the contention that the claims were of no value for mineral purposes because such minerals had become exhausted. The plaintiff had been in possession for a number of years, operating the mines, and, for all that appears, it may have exhausted them of their minerals, and thus been the instrument in defeating the issuance of the patents.

Upon the whole, we conclude that it was the intendment of the parties with respect to the unpatented claims that the possessory title alone was being dealt with, and that Beaudry's obligation extended only to a conveyance of his possessory title in such claims, and not to a fee simple or ultimate title, and that failure to acquire the patents because the minerals had been exhausted does not constitute a breach of the agreement for which a rescission may be had.

Affirmed.