(No. 6949.   December 13, 1941)

EUGENE A. WIESENTHAL, Appellant, v. ABE GOFF, In personam and as Administrator of the Estate of Premus Doffner, Deceased, OTTO A. HUEFNER and H. A. SEWELL, Respondents.

(120 Pac. (2d) 248)

Murray Estes, for Appellant.

Tom Felton, for Respondents.

AILSHIE, J.—June 3, 1893, Premus Doffner, "an old-time resident of Latah county," located the Annie Marie Placer Mining claim in the Hoodoo Mining District, Latah county. Within the same mining district, July 22, 1898, one Roberts located the Klondike claim and one Maxwell located the Lucky Dog placer mining claim, both contiguous to the "Annie Marie." September 5, 1904, a deed from Roberts and Maxwell was given to Jacob Slaght covering the Klondike and Lucky Dog claims; Slaght conveyed an undivided one-half interest in the property to John Buller, June 23, 1909; on the same date Buller assigned his interest in the property to Turnbow and Speake. December 4, 1911, a quitclaim deed to the mining claims and equipment was executed by J. O. Slaght to F. O. Slaght. July 8, 1912, F. O. Slaght gave a quitclaim deed to an undivided one-half interest in the Klondike and Lucky Dog mining claims to Premus Doffner. Proof of labor on the three mining claims was filed for the years 1935, 1937, 1938, and 1940.

Respondent Goff first met Doffner on the ground in

dispute in 1930. Later Doffner became mentally incompetent and Goff was appointed his guardian. As guardian, Goff leased in 1935 the three mining properties to James Abraham, J. C. Franklin, and Mrs. Huefner. January 26, 1936, Doffner died, and April 7th following, Goff was appointed administrator of his estate.

The first part of May, 1936, one Sewell, owner of the "Protection Placer which joins the Klondike on the southeast line" worked the three mining claims above named under a sub-lease. During the years '36 and '37 between $14,000 and $15,000 was expended on the claims.

As the heirs were anxious to get the property disposed of, and as Doffner held record title to only an undivided one-half interest in two of the mining claims (Klondike and Lucky Dog), Goff, as administrator, hired Otto A. Huefner, a mining engineer, to make a relocation of the Klondike claim. This was done in order to perfect the title to the claim, in Goff's name individually, as he testified, "upon the theory that when a person acts in a fiduciary capacity, anything he does personally is construed to be done for the benefit of the trust that he holds." The relocation of the claim was made June 1, 1936, under the name of the "Klondyke No. 1 Placer Claim" and was recorded June 13, 1936; an amended location was made by Huefner August 24, 1938, and recorded the same date.

On the abandonment of the lease by Abraham, Franklin and Huefner, a new lease was given by Goff to H. A. Sewell, May 31, 1938; August 11, 1939, the property was sold to Sewell by order of the probate court and Goff executed an administrator's deed, for the consideration of $3,000. This deed was subject to a prior mortgage, dated July 25, 1939, given by Sewell and wife to the administrator of the Doffner estate, covering the three mining claims, and securing a promissory note for $2900. Subsequent to the sale of the claim by the administrator to Sewell and on April 17, 1940, Sewell filed in the U. S. land office an application for patent to the Klondyke No. 1 and thereafter published the required notice and made proof thereof as required by the federal statute.

Appellant Wiesenthal had resided at Harvard, Idaho, for about 37 years. He testified that, June 1, 1936, with

one Surig, he started locating a placer mining claim situated in the same mining district as the three claims above named; that they "set up the location post and dug one hole." They filed their placer location notice June 9, 1936, and called the claim the Enterprise Gold Placer Claim. Proof of labor on the Enterprise claim was filed for the years 1936, '37, '38 and '39.

There is conflict in the testimony concerning the date of Huefner's relocation of the Klondyke claim. However, the court found that the claim was located June 1, 1936, by Huefner, on behalf of the administrator of the Doffner estate; and that the statutes of the state and federal government had been complied with.

July 13, 1940, Wiesenthal brought this action praying for a decree awarding him the exclusive right of possession to the premises covered by the Enterprise Gold Placer claim. Decree was entered quieting defendant Sewell's title subject to the lien of mortgage to Goff as administrator of the Doffner estate; and quieting plaintiff's title to the land embraced in the Enterprise mining claim, except that portion in conflict with the defendants' Klondyke No. 1 location. From this decree, plaintiff has appealed.

Questions of practice and procedure in the urging of errors assigned by respondents on appeal have been raised but we do not deem it necessary or important that we consider them here.

The controlling issue in this case is: Which is the prior location, the Klondyke No. 1 or the Enterprise. Appellant contends that he made the Enterprise location June 3, 1936; that, at that time the ground covered by his location was unoccupied and open to mineral location. He further claims that, *if the Klondyke No. 1 location was made June first*, 1936, "it was initiated by stealth and secrecy while the property was in possession of the plaintiff." There is no substantial evidence to support this latter contention; nor is there any substantial evidence contradicting or disproving the location of the Klondyke No. 1 on June first. Some circumstantial evidence was introduced by appellant, to the effect that the location could not have been made on that date openly or notori-

ously. On the other hand, there is a very sharp conflict in the evidence as to the date on which appellant made the Enterprise location. He alleged and contended that it was made June 3d. There being conflicting, substantial evidence on this latter question, our consideration of that issue is foreclosed by the finding of the trial court as follows:

"That the purported location claimed to have been made on the 1st and 3rd day of June, 1936, by plaintiff Eugene A. Wiesenthal, was not made until on or about the 8th day of June, 1936. That the notice of location has been altered, and that the date shown on the notice of location, to wit: The 8th day of June was the true and correct day of said notice, and that the alteration to make the notice read the 3rd day of June, 1936, was not the true date of said notice or of said location. That the demeanor of plaintiff, Eugene A. Wiesenthal and his witnesses, and their manner of testifying was such as to convince the trial judge that the testimony of said witnesses on controverted facts were untrue."

It therefore follows that our further consideration of the case must be predicated on the conclusion that the Klondyke No. 1 location is *prior and superior* to the Enterprise location.

It is urged by appellant that the relocation of the Enterprise claim by Otto Huefner as "Sally No. 5" is an admission of record of the validity of the Enterprise location and is binding on defendant Sewell, successor in interest of Otto Huefner.

Under authority of *Belk v. Meagher,* 104 U. S. 279, 26 L. ed. 735; *Willis v. Blain,* (N. Mex.) 20 Pac. 798; *Betsch v. Umphrey,* 252 Fed. 573, 164 C. C. A. 489; *Zerres v. Vania,* 150 Fed. 564, 80 C. C. A. 366; *Blake v. Cavins,* 25 N. Mex. 574, 185 Pac. 374, the *relocation* of a part or all of a prior location *"as a relocation,"* without discovery of mineral, is held to be an admission of the validity of the *prior* location. Such, however, is not the case here. The location of the Sally No. 5 is not a location or relocation of the *Klondyke.* The notice recognizes the "Klondyke No. 1" as an *overlapped* claim. It was made nearly three years (May 7, 1939) *after* the location of the

Klondyke No. 1 (June 1, 1936), and *after* the "so-called Enterprise" location had "apparently been abandoned," as recited in the location notice itself. The Sally No. 5 location was clearly not made or intended to embrace the Klondyke No. 1. The validity of the locations of the Enterprise and Sally No. 5 claims, or either of them, is not here for consideration; and as to whether a placer location on unclaimed ground may extend also over an existing location, as may be done in location of lode claims, is a question with which we are not concerned in this case. (*Stenfjeld v. Espe,* 171 Fed. 825, 96 C. C. A. 497; 2 Lindley on Mines (3d ed.), sec. 448b.)

It is thought that the "admission" of location mentioned in *Belk v. Meagher, supra,* and other cases above cited prevails only in controversies between the claimants to the same ground under the two separate locations.

This brings us to the examination of a somewhat unique contention made by appellant against the validity of the Klondyke No. 1 location. As hereinbefore indicated, the location notice made and posted June 1, 1936, on the Klondyke No. 1 claim, and subsequently filed for record, was signed

> "Abe Goff by
> Otto A. Huefner
> Locator"

It is now claimed by appellant that neither Goff nor Heufner was locating this mining ground for himself but was doing so for the *estate* of Premus Doffner, deceased; and that an "estate" cannot locate a mining claim under the provisions of sec. 22, Tit. 30, U. S. C. A.

There are convincing reasons why appellant's contention in this respect cannot be sustained. It stands admitted that both Goff and Huefner were citizens of the United States and, in all respects, qualified to locate a mining claim. No attempt was made to locate the claim in the name of, or by, an "estate." The fact that it was intended that the location should inure to the benefit of an estate represented by the locator, does not in any way militate against the validity of the location. The United States statute (sec. 26, Tit. 30 U. S. C. A.) specifically

recognizes the rights of "heirs," in mining claims, the same as anyone else. It reads, inter alia:

"The locators . . . . their heirs and assigns, . . . . shall have the exclusive right of possession and enjoyment," etc. of mining claims located in pursuance of the statute.

The courts have uniformly held that unpatented mining claims are "property in the highest sense of that term, which may be bought, sold, and conveyed, and will pass by descent." *Sullivan v. Iron Silver Min. Co.*, 143 U. S. 431, 12 Sup. Ct. 555, 36 L. ed. 214; *Trinity Gold Dredging & Hydraulic Co. v. Beaudry*, 223 Fed. 739, 741, 139 C. C. A. 269; *Forbes v. Gracey*, 94 U. S. 762, 24 L. ed. 313.

When the locator and possessor of a mining claim dies, his interest and property right in a mining claim does not cease or vanish but passes to his heirs, subject to administration and payment of his debts. (Sec. 22, Tit. 30 U. S. C. A.; *Phoenix Min. & Mill. Co. v. Scott*, 20 Wash. 48, 54 Pac. 777.) The administrator is the official and legal representative and trustee of the heirs and creditors; and it is his duty to protect and conserve the estate. (*Schneeberger v. Frazer*, 36 Idaho 737, 747, 213 Pac. 568; *Estate of Fleshman*, 51 Idaho 312, 319, 5 P. 2d 727; *State Insurance Fund v. Hunt*, 52 Idaho 639, 645, 17 P. 2d 354.) That appears to be what the administrator was doing in this instance.

Decedent, Doffner, in his lifetime, had been the undisputed owner, whose right was evidenced both by possession and record title of a one-half interest in the ground now covered by the Klondyke No. 1 location and formerly known as the "Klondike claim." He had been in possession of and, from time to time, working this property for more than thirty years. While this location of June 1, 1936, by Goff, through his agent Huefner, was on its face a new and independent location of this ground, it nevertheless appears from the record before us that the relocation was made for the purpose only of completing a record title covering the undivided one-half interest in the claim which Doffner apparently owned prior to his death but for which he had no record title. Appellant was in no way deceived or misled. It seems clear that he knew

of the previous location and of Doffner's occupancy and ownership of the claim. (*Independence Placer Min. Co. v. Hellman,* 62 Idaho 180, 109 P. 2d 1038, 1042; *Gerber v. Wheeler,* 62 Idaho 673, 115 P. 2d 100, 103; *Ehrhart v. Bowling,* 36 Cal. App. 2d 503, 97 Pac. 2d 1010, 1012.)

It is also contended that the location was fatally defective because it did not conform to the U. S. system of public land surveys.

As to whether a placer claim conforms "as near as practicable with the United States system of public-land surveys," (sec. 35, Tit. 30 U. S. C. A.) is a question addressing itself primarily to the land department, to be determined when the claimant seeks title from the government; and concerns the courts only in so far as the issue may be raised between adverse claimants to the actual possession of the land embraced within the claim. *Snowflake Fraction Placer,* 37 L. D. 250, 257; *Hy-Grade Placer Mining Claim,* 53 L. D. 431; 1 Lindley on Mines (3d ed.), sec. 448; *Hanson et al. v. Craig,* 170 Fed. 62, 95 C. C. A. 338; *Mitchell v. Hutchinson,* 142 Cal. 44, 76 Pac. 55.

In the Snowflake Fraction case, supra, First Assistant Secretary of the Interior, Pierce, discussed this provision of the statute at length and, among other things, said:

"In 1 Lindley on Mines, 2nd ed., sec. 448, it is said: '*As to whether it is practicable to make a location or survey conform to legal subdivisions is a matter which rests entirely within the land department.*' .... *Whether placer claims conform sufficiently is a question of fact to be determined by the Department.* Each case must be decided upon its own facts. It is the policy of the Government to have entries, whether they be for agricultural or mining lands, in compact form. Congress has repeatedly announced this principle, and the Department has always and does now insist upon it. The public domain must not be cut into long and narrow strips. No shoe-string claims should ever receive the sanction of the Department. ... The Department also holds that it is unreasonable, impracticable and not in harmony with the conformity provision of the statute to require a claimant to conform to legal subdivisions of the public surveys and the rectangu-

lar subdivisions thereof when such requirement would compel a claimant to place his lines on other prior located claims or when his claim is surrounded by prior locations, . . . " (Italics supplied.)

More recently, (1931) in *Hy-Grade Placer Mining Claim*, 53 L. D. 431, Assistant Secretary Edwards reviewed the various decisions on the subject, cited, quoted from, and approved the Snowflake opinion and concluded in substance that "Each case presented must be considered and decided on its own facts." The decision of the general land office, in the Hy-Grade case, was reversed and claimants were permitted to take patent to *an irregular strip of land along the course of a gulch or canyon,* without conforming to the public land survey.

▆▆▆ Assuming, however, without so deciding, that it was necessary in this case for the court to make a finding as to whether or not it was "practicable" to locate the Klondyke No. 1 claim in conformity with the public land survey, the court did in fact do so and found as follows:

"That said placer mining ground was situated in a remote and relatively rough country and because of the nature of the terrain only small areas of the gulch or valley floor are suitable for working with a dredge or large placer washing machine. That though this land was surveyed under the circumstances the land desired for dredge work could not reasonably and practicably have been included in a claim conforming to the survey lines. The Klondyke No. 1 claim did conform as near as was reasonably practicable."

This finding has substantial support in the evidence.

Judgment affirmed. Costs awarded to respondents.

Budge, C.J., Givens and Holden, JJ., concur.

Morgan, J., deeming himself disqualified, did not sit at the hearing nor participate in the opinion.